IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BREWER ENVIRONMENTAL           )     CIVIL NO. 10-00221 LEK-KSC
INDUSTRIES, LLC dba BEI LLC,   )
BEI HOLDINGS, INC., BREWER     )
ENVIRONMENTAL INDUSTRIES       )
HOLDINGS, INC. and SEABRIGHT   )
INSURANCE COMPANY,             )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
MATSON TERMINALS, INC. and     )
MATSON NAVIGATION COMPANY,     )
INC.,                          )
                               )
          Defendants.          )
_____)


ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT

          Before the Court is Defendants Matson Terminals, Inc.'s

("Matson") and Matson Navigation Company, Inc.'s (collectively,

"Defendants") Motion for Judgment on the Pleadings or for Summary

Judgment ("Motion"), filed on January 24, 2011.  Plaintiffs

Brewer Environmental Industries, LLC, doing business as BEI LLC,

BEI Holdings, Inc., Brewer Environmental Industries Holdings,

Inc. (collectively, "Brewer"), and Seabright Insurance Company

("Seabright") (all collectively, "Plaintiffs"), filed their

memorandum in opposition to the Motion on March 7, 2011.

Defendants filed their reply on March 11, 2011.  This matter came

on for hearing on April 4, 2011.  Richard Wooten, Esq., appeared

by telephone on behalf of Plaintiffs.  John Lacy, Esq., appeared

on behalf of Defendants.  After careful consideration of the

Motion, supporting and opposing memoranda, and the arguments of

counsel, the Court HEREBY GRANTS IN PART AND DENIES IN PART

Defendants' Motion for the reasons set forth below.

## BACKGROUND

I.  **Factual History**

On November 10, 2004, non-party Kyle Soares injured his

back while working for Brewer as a longshoreman.  [Complaint at

¶ 6.]  Soares' injury occurred in the course and scope of his

employment as a covered employee under the Longshore and Harbor

Workers' Compensation Act, 33 U.S.C. § 901 et seq. ("LHWCA").

[Id. at ¶ 6 (citing 33 U.S.C. § 902(3)).]  At the time of the

injury, Brewer was covered by Seabright under a workers'

compensation insurance policy[1] ("Insurance Policy") for claims

brought by its employees under the LHWCA.  [Id. at ¶ 7.]

Following a medical release by his treating physician, Soares

returned to work on January 3, 2005.  [Id. at ¶ 15.]

On January 31, 2005, Brewer and Defendants entered into

_____

[1] The Insurance Policy is attached to Defendants' Separate
and Concise Statement of Facts in Support of its Motion for
Judgment on the Pleadings or for Summary Judgment ("CSOF") as
Exhibit A to the Declaration of Counsel.  [Filed 1/24/11 (dkt.
no. 31-3).]  According to the Insurance Policy, the coverage was
effective beginning December 1, 2003.  [Insurance Policy at
SEA.SOA 0142.]

an Asset Purchase Agreement[2] ("Agreement") whereby Brewer agreed to sell and Defendants agreed to purchase HT&T Stevedoring, a business providing stevedoring services on the island of Hawai`i. [Id. at ¶ 10.]  The Agreement contains an indemnity provision which provides, in relevant part:

> Purchaser shall indemnify, defend, and hold harmless Seller from and against any and all loss, damage, claim, cost and expense and any other liability whatsoever (including, without limitation, reasonable attorneys' fees, charges and costs) incurred by Seller by reason of any claim, demand or litigation relating to the Property Employees which arise from any act, omission, occurrence or matters that take place after the Cut-off Time.

[Agreement at ¶ 5.3.]  The "Cut-off Time" for the Agreement was January 31, 2005 at 11:59 p.m.  [Agreement at 1, ¶¶ 1.11, 1.5.] As a "Property Employee", Soares became Defendants' employee effective February 1, 2005.  [Id. at ¶¶ 1.27, 5.2.]

## II.  **Procedural History**

On June 10, 2005, Soares filed a claim with the Office of Workers' Compensation Programs, United States Department of Labor ("OWCP"), for compensation under the LHWCA against Brewer and Seabright for his November 10, 2004 injury.  [Complaint at ¶ 16.]  In accordance with the Insurance Policy, Seabright timely paid Soares his compensation benefits and covered his medical expenses.  [Id. at ¶ 7.]

---

[2] The Agreement is attached to Defendants' CSOF as Exhibit B to the Declaration of Counsel.  [Dkt. no. 31-4.]

On February 21, 2006, Soares filed a second claim with the OWCP for compensation against Defendants for "cumulative trauma". [Id. at ¶ 16.] Plaintiffs tendered the defense and indemnity for Soares' "cumulative trauma" claims to Defendants on June 5, 2006, but Defendants refused to acknowledge liability. Seabright paid for Soares' compensation benefits and medical expenses, and covered the attorneys' fees and costs of defending Brewer. [Id. at ¶¶ 17-18.]

United States Department of Labor Administrative Law Judge ("ALJ") Gerald Etchingham held a hearing on the "cumulative trauma" claim on November 29, 3007. On June 13, 2008, ALJ Etchingham issued his Decision and Order Awarding Benefits ("Administrative Order").[3] [Admin. Order at 1-2.] ALJ Etchingham concluded that Soares' back injury worsened as a result of his work for Defendants, and that Defendants were liable as the last responsible employer. As a result, ALJ Etchingham ordered Defendants to pay all disability compensation and medical benefits due to Soares. He further ordered Defendants to reimburse Plaintiffs for compensation and medical expenses paid by Seabright to Soares for the time period after he began working for Defendants on February 1, 2005. The issue of attorneys' fees was not before ALJ Etchingham and he did not rule

---

[3] The Administrative Order is attached to Defendants' CSOF as Exhibit C to the Declaration of Counsel. [Dkt. no. 31-5.]

on the matter. [Id. at 27-28.]

According to the Complaint, "Defendants have failed and refuse to reimburse Plaintiffs in full for the compensation, medical expenses, and benefits it paid after Soares began working for Defendants in 2005[,]" as well as for the legal fees and costs incurred in defending Brewer against Soares' claims. [Complaint at ¶ 20.] Both parties now appear to agree, however, that Defendants reimbursed Seabright for the "post-January 31, 2005 benefits" provided by Seabright to Soares.[4] [Mem. in Opp. at 2; Mem. in Supp. of Motion at 5.]

On April 16, 2010, Plaintiffs filed their Complaint asserting two causes of action. Plaintiffs' first claim alleges that Defendants breached Paragraph 5.3 of the Agreement by failing to defend and indemnify Plaintiffs. Plaintiffs' second claim alleges that they are entitled to equitable indemnity. Under both claims, Plaintiffs seek: (1) payment of $1,700.00 in LHWCA compensation and medical benefits, including interest; and

---

[4] Defendants claim that they paid the compensation and medical benefits ordered by ALJ Etchingham. Defendants also claim that they reimbursed Seabright for the benefits it paid to Soares. [Mem. in Supp. of Motion at 5.] Plaintiffs contend that Matson's insurance company, Signal Mutual Indemnity Association, Ltd. ("Signal"), made such payments on behalf of Matson. [Mem. in Opp. at 2.] Copies of Signal's checks to Seabright and its accompanying correspondence are attached to Plaintiffs' Separate Concise Statement in Opposition to Defendant's [sic] Motion for Judgment on the Pleadings or for Summary Judgment as Exhibit B to the Declaration of Steven Wiper. [Filed 3/07/11 (dkt. no. 35-8).]

(2) $139,527.04 in attorneys' fees and costs.  [Complaint at ¶¶ 21-32.]

In the instant Motion, Defendants request judgment on the pleadings or, in the alternative, summary judgment. Defendants argue that: (1) Plaintiffs lack standing; (2) the LHWCA, as the exclusive remedy in this case, does not provide for the recovery of attorneys' fees and court costs; and (3) the American Rule bars the recovery of attorneys' fees and expenses.

In their Memorandum in Opposition to the Motion, Plaintiffs refute Defendants' standing argument, contending that Seabright has standing as both an intended third-party beneficiary and an assignee under the Agreement.  Plaintiffs then rebut Defendants' claim that the LHWCA provides the exclusive remedy in this case, arguing that the exclusive remedy provision applies to tort liability but not contract claims.  Finally, Plaintiffs argue that they are entitled to reimbursement for their expenditures, including attorneys' fees and costs, under the doctrines of equitable indemnity and equitable subrogation.

In their Reply, Defendants refute Plaintiffs' arguments that Seabright is a third-party beneficiary and assignee under the Agreement and contend that Plaintiffs' equitable claims are barred by the LHWCA or otherwise inapplicable.

## DISCUSSION

## I.   Applicable Law

"When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 22-23 (2004) (citing Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S. Ct. 886 (1961)).  Where a maritime contract's interpretation implicates local interests, however, it "beckon[s] interpretation by state law." Id. at 27 (citing Kossick, 365 U.S. at 735, 81 S. Ct. 886).  As explained by the Ninth Circuit:

> [A] contractual claim gives rise to Section 1333 admiralty jurisdiction when the underlying contract is "maritime in nature." Norfolk S. Ry. Co. v. James N. Kirby, 543 U.S. 14, 26, 125 S. Ct. 385, 160 L. Ed.2d 283 (2004).  To make this determination, we must examine a contract to determine "whether the principal objective of a contract is maritime commerce." Id. at 25, 125 S. Ct. 385.  In adopting this framework, the Supreme Court rejected the longstanding "spatial approach" to determining the maritime nature of contracts. Id. at 24-25, 125 S. Ct. 385.  The Court instead held that a "conceptual approach" was needed because modern maritime commerce "is often inseparable from some land-based obligations." Id. at 25, 125 S. Ct. 385.  The conceptual approach acknowledges this modern reality by examining whether the contract references "maritime service or maritime transactions." Id. at 24, 125 S. Ct. 385 (quoting N. Pac. S.S. Co. v. Hall Brothers Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125, 39 S. Ct. 221, 63 L. Ed. 510 (1919)).

ProShipLine Inc. v. Aspen Infrastuctures Ltd., 609 F.3d 960, 967 (9th Cir. 2010).

Where a court finds that a contract is a maritime one, the court must then determine whether the parties' dispute is inherently local. As explained by the Supreme Court in Norfolk Southern Railway:

> [N]ot "every term in every maritime contract can only be controlled by some federally defined admiralty rule." Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313, 75 S. Ct. 368, 99 L. Ed. 337 (1955) (applying state law to maritime contract for marine insurance because of state regulatory power over insurance industry). A maritime contract's interpretation may so implicate local interests as to beckon interpretation by state law. . . . [W]hen state interests cannot be accommodated without defeating a federal interest . . . then federal substantive law should govern.

543 U.S. at 27 (some citations omitted).

The instant case involves two contracts: a contract for the sale of a stevedoring business and a workers' compensation insurance policy issued to a stevedoring company. The first contract, the Agreement, is fundamentally "maritime in nature." It concerns the sale of a company that is in the business of loading and unloading vessels in a port. See Simon v. Intercontinental Transp. (ICT) B.V., 882 F.2d 1435, 1443 (9th Cir. 1989) ("Stevedoring contracts are maritime because of their connection to the sea and to maritime commerce."). The dispute, however, appears to be inherently local: it concerns the right to obtain reimbursement for payments made and costs incurred in a workers' compensation case. The Agreement is a contract for the

8

sale of a Hawai`i company, HT&T Stevedoring, from two Hawai`i companies, Plaintiffs Brewer Environmental Industries, LLC, doing business as BEI LLC, and BEI Holdings, Inc., to another Hawai`i company, Defendant Matson Terminals, Inc.[5] [Agreement at 1.] Moreover, Paragraph 12.10 of the Agreement provides that the contract "shall be construed under and be governed by the laws of the State of Hawaii[,]" and there is no indication that applying such law in this case would defeat a federal interest. The Court therefore FINDS that Hawai`i state law applies to claims arising from the Agreement.

While the second contract, the Insurance Policy, specifically concerns a maritime employer's liability for workers injured in the course of their maritime employment, [Insurance Policy at SEA.SOA 0147-48 (detailing the policy's "Maritime Coverage Endorsement"),] disputes arising from insurance policies are generally governed by state law, Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 313-14 (1955) (explaining that state regulatory power over maritime contracts "has always been particularly broad in relation to insurance companies and the contracts they make"). As the Ninth Circuit explained in Aqua-Marine Constructors, Inc. v. Banks, "disputes over maritime insurance contracts may be governed by state law, in the same

_____

[5] Matson Navigation Company, Inc. is listed as a "Parent" rather than a "Purchaser". [Agreement at 1.] Its state of incorporation is not listed in the Agreement.

manner as non-maritime insurance contracts, as long as the state law does not clearly conflict with federal maritime law." 110 F.3d 663, 667-68 (9th Cir. 1997) (citing Askew v. American Waterways Operators, Inc., 411 U.S. 325, 341, 93 S. Ct. 1590, 1600, 36 L. Ed. 2d 280 (1973)). In the instant case, neither of the parties have asserted, and the Court has failed to discern, any direct conflict between Hawai`i contract law and federal maritime law. The Court therefore FINDS that Hawai`i state law also applies to claims arising from the Insurance Policy.

## II. <u>Judgment on the Pleadings</u>

Defendants have moved for judgment on the pleadings. Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed - but early enough not to delay trial – a party may move for judgment on the pleadings." In considering a Rule 12(c) motion, a court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the non-moving party. <u>Fleming v. Pickard</u>, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted). A motion for judgment on the pleadings should be granted when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u> (citation omitted).

Following the Supreme Court decision's in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), courts have applied the <u>Iqbal</u> standard for Federal Rule of Evidence 12(b)(6) motions to Rule

12(c) motions.  See, e.g., Peelua v. Impac Funding Corp., Civil

No. 10-00090 JMS/KSC, 2011 WL 1042559, at *2 (D. Hawai`i Mar. 18,

2011) ("Following Iqbal, courts have applied Iqbal to Rule 12(c)

motions." (citations omitted)); Point Ruston, L.L.C. v. Pac. Nw.

Reg'l Council of the United Bhd. of Carpenters & Joiners, 658 F.

Supp. 2d 1266, 1273 (W.D. Wash. 2009) ("The standard applied on a

Rule 12(c) motion is essentially the same as that applied on a

Rule 12(b)(6) motion[.]" (citation omitted)).  To survive a

motion to dismiss under Iqbal, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at

1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570,

127 S. Ct. 1955 (2007)).  The tenet that the court must accept as

true all of the allegations contained in the complaint "is

inapplicable to legal conclusions."  Id.  Accordingly,

"[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice."  Id.

(citing Twombly, 550 U.S. at 555, 127 S. Ct. 1955).  Rather, "[a]

claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  Id.

(citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).  Factual

allegations that only permit the court to infer "the mere

possibility of misconduct" do not constitute a short and plain

statement of the claim showing that the pleader is entitled to relief as required by Federal Rule of Civil Procedure 8(a)(2). Id. at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted). "But courts have discretion to deny leave to amend a complaint for futility[.]" Johnson v. American Airlines, Inc., 834 F.2d 721, 724 (9th Cir. 1987) (citation and quotation marks omitted).

Finally, if on a motion for judgment on the pleadings, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Since no such matters are presented in the instant case, the Court treats Defendants' Motion solely as a request for judgment on the pleadings.

## II. **Standing**

As preliminary matter, Defendants argue that Plaintiffs lack standing. Defendants contend that, because standing is the "'threshold question in every federal case[,]'" Plaintiffs' "fail[ure] to meet that threshold" warrants judgment on the pleadings in Defendants' favor. [Mem. in Supp. of Motion at 6-7 (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).]

### A. **Brewer**

Defendants argue that Brewer lacks standing because it has not alleged any harm or suffered an injury in fact. Defendants explain that "there is not a single allegation of a particularized harm suffered by any of the Brewer plaintiffs[,]" [id. at 7-8,] and "the monetary amounts which Plaintiffs are seeking[] were expended solely by Seabright" [id. at 7]. Defendants explain that a plaintiff "'must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'" [Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).] Defendants contend that, since Brewer is not among the injured, as required by the injury-in-fact test, Brewer lacks standing to sue Defendants. [Id. at 8.] Plaintiffs have not addressed this argument.

The law on standing is clear: "[i]n order to invoke the jurisdiction of the federal courts, a plaintiff must establish 'the irreducible constitutional minimum of standing,' consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." Lopez v. Candaele, 630 F.3d 775, 785 (9th Cir. 2010) (quoting Lujan, 504 U.S. at 560-61, 112 S. Ct. 2130) (some citations omitted). To demonstrate injury in fact, a plaintiff "must show that [it] is under threat of suffering 'injury in

fact' that is concrete and particularized" rather than "conjectural or hypothetical[.]" <u>Summers v. Earth Island Inst.</u>, 129 S. Ct. 1142, 1149 (2009). Explained another way, "Art[icle] III [of the United States Constitution] requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant[.]'" <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 472 (1982) (quoting <u>Gladstone, Realtors v. Village of Bellwood</u>, 441 U.S. 91, 99, 99 S. Ct. 1601, 1608, 60 L. Ed. 2d 66 (1979)).

"[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." <u>Lujan</u>, 504 U.S. at 563 (internal quotation marks and citation omitted); <u>see also</u> <u>id.</u> at 561 n.1 ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."); <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975) ("[T]he plaintiff . . . must allege a distinct and palpable injury to himself, even if it is an injury shared by a large class of other possible litigants."). The party invoking federal jurisdiction "bears the burden of establishing standing[,]" including an injury in fact. <u>Lopez</u>, 630 F.3d at 785.

The only injury that Plaintiffs have pled in the

14

instant case is the unreimbursed payment of compensation, benefits, attorneys' fees, and costs stemming from Soares' cumulative trauma claim. Both counts in the Complaint allege that "*Plaintiffs* have expended, and continue to expend, significant legal fees and costs asserting [their] claim[s] against Defendants for reimbursement of the compensation, medical benefits and defense fees and costs[.]" [Complaint at ¶¶ 27, 31 (emphasis added).] Plaintiffs subsequently clarify in each count, however, that such fees and costs were paid exclusively by Seabright. [Id. at ¶¶ 26, 30 ("SEABRIGHT has paid on behalf of BREWER a sum in excess of $1,700.00 in [LHWCA] compensation and medical benefits . . . [and] expended a sum in excess of $139,527.04 in legal fees and costs to defend BREWER against Mr. Soares' claims[.]").] Seabright's expenditures do not demonstrate a clear injury to Brewer. The Court therefore FINDS that Brewer lacks standing to bring either the breach of contract or the equitable indemnity claims. The Court further FINDS that the amendment of such claims would be futile. Accordingly, the Court DISMISSES WITH PREJUDICE Brewer's breach of contract and equitable indemnity claims.

**B.** **Seabright**

**1.** **Third-Party Beneficiary Status**

Defendants contend that Seabright lacks standing because it is neither a party to the Agreement nor an intended

15

third-party beneficiary.  First, Defendants note that the
Agreement is between Matson and Brewer, and a "well-established
rule in cases involving contract claims is that 'third parties do
not have enforceable contract rights.'"  [Mem. in Supp. of Motion
at 8 (quoting Ass'n of Apartment Owners of Newton Meadows v.
Venture 15, Inc., 167 P.3d 225, 262 (Haw. 2007) (citing Pancakes
of Hawaii, Inc. v. Pomare Props. Corp., 944 P.2d 97, 106 (Haw.
App. 1997))).]  While Defendants acknowledge that intended
third-party beneficiaries are an exception to this rule, they
argue that Seabright is not an intended third-party beneficiary.
Defendants contend that, where the status of a third party is in
dispute, the "burden is on the plaintiff to show that the
contracting parties intended to confer such a benefit and that
burden requires 'a virtual express declaration to overcome the
presumption that the parties contracted only for themselves.'"
[Id. at 9 (quoting Ass'n of Apartment Owners, 167 P.3d at 265).]
Defendants argue that the Agreement not only lacks such a
declaration, but that Paragraph 12.8 of the Agreement provides
for exactly the opposite: "the [Agreement] explicitly states that
it does *not* confer any benefits to third parties."  [Id.
(emphasis in original).]  As a result, Defendants contend that
Seabright lacks standing and its claims should be dismissed.
[Id. at 11.]

        Plaintiffs argue that Seabright is an intended third-

16

party beneficiary of the Agreement.  Plaintiffs argue that the rights of intended third-party beneficiaries may be express or "'*implied from the circumstances*.'"  [Id. at 11 (quoting Remington Typewriter Co. v. Kellogg, 19 Haw. 636, 640 (1909)) (emphasis added by Plaintiffs).]  According to Plaintiffs, the "circumstances" in the instant case imply that Seabright is an intended third-party beneficiary of the Agreement's indemnity provision.  [Id. at 11-12.]  Plaintiffs submit that, since Brewer and Matson were required to have workers' compensation insurance by the LHWCA, [id. at 4-5,] the indemnity provision covering "reasonable attorney's fees, charges and costs" was necessarily intended for their benefit [id. at 12].

"Generally, 'third parties do not have enforceable contract rights.  The exception to the general rule involves *intended* third-party beneficiaries.'"  Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Hawai`i 232, 269, 167 P.3d 225, 262 (2007) (quoting Pancakes of Hawai`i, Inc. v. Pomare Props. Corp., 85 Hawai`i 300, 309, 944 P.2d 97, 106 (App. 1997)) (emphasis in original).  An intended third-party beneficiary has standing to enforce contract provisions from which it is intended to benefit.  Id. at 270, 167 P.3d at 263 (citations omitted).

The party claiming to be an intended third-party beneficiary bears the burden of proving that status.  Id. at 271,

167 P.3d at 264 (citations omitted).  Even where the parties are aware that a contract – or, in this case, a provision in a contract – is designed to benefit others, "it is not enough that the parties know, expect[,] or even intend that such people may benefit or that they are referred to in the contract."  Id. at 272, 167 P.3d at 265 (internal quotation marks and citations omitted) (alteration in original).  Rather, there must be evidence that the contracting parties intended to confer a direct benefit on the third party.  Id.

While the rights of a third party beneficiary can arise from a promise that is "implied from the circumstances," Jou v. Nat'l Interstate Ins. Co. of Hawaii, 114 Hawai`i 122, 131, 157 P.3d 561, 570 (Haw. Ct. App. 2007) (citation and internal quotation marks omitted), the circumstances in this case do not merit such a finding.  The disputed contract provision, Paragraph 5.3, refers exclusively to the "Purchaser," Defendant Matson Terminals, Inc.,[6] and the "Seller," Plaintiffs Brewer Environmental Industries, LLC, doing business as BEI LLC, and BEI Holdings, Inc.  [Agreement at 1, 12 ¶ 5.3 ("Purchaser shall indemnify, defend, and hold harmless Seller from and against any and all loss, damage, claim, cost and expense and any other liability whatsoever (including, without limitation, reasonable

_____

[6] As explained in footnote 5, *supra*, Matson Navigation Company, Inc. is listed not as the "Purchaser" but rather the "Parent".  [Agreement at 1.]

attorneys' fees, charges and costs) incurred by Seller . . .
.").]  The indemnity provision mentions neither Seabright in
particular nor insurance companies in general.  Hawai`i courts
are loathe to find intended third-party beneficiary status absent
a clear recognition of the third party and the conferred benefit.
See <u>Laeroc Waikiki Parkside, LLC v. K.S.K. (Oahu) Ltd. P'ship</u>,
115 Hawai`i 201, 215 n.15, 166 P.3d 961, 975 n.15 (2007) (finding
no third party beneficiary status in part because "the Agreement
does not indicate that the [contracting parties] agreed between
themselves to bestow a benefit upon the [third parties] . . ."
(internal quotation marks omitted)); <u>see also</u> <u>Pancakes of Hawaii</u>,
85 Hawai`i at 309, 944 P.2d at 106 (finding no third party
beneficiary status where "nothing in the terms of the lease or in
the record indicates [that the third parties] would benefit in
any way from the lease agreement").[7]

The Agreement, furthermore, contains an express
provision stating that the contracting parties do not intend to

---

[7] The Court is not persuaded by Plaintiffs' argument that
<u>Laeroc Waikiki Parkside</u> and <u>Pancakes of Hawaii</u> are inapposite
because they do not involve "stevedoring companies and their
respective workers' compensation insurers, a contract for the
sale of a stevedoring operation, the transfer of longshore
workers, or a contractual cross-indemnity obligation for injuries
to those longshore workers."  [Mem. in Opp. at 15-16.]  The Court
has determined that the contracts at issue in this case implicate
local interests and therefore beckon interpretation by Hawai`i
state law.  <u>See</u> <u>Norfolk S. Ry. Co. v. Kirby</u>, 543 U.S. 14, 27
(2004).  The Court is aware of no authority suggesting that such
law is inapplicable merely because the instant contracts involve
matters relating to stevedoring companies.

confer any rights to third parties.  Paragraph 12.8 of the Agreement provides:

> **Third Parties.**  Nothing in this Agreement, express or implied, is intended to confer upon any person, other than the Parties and their respective heirs, executors, personal representatives, successors and assigns, any rights or remedies under or by reason of this Agreement.  Nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third person to any Party, nor shall any provision herein be construed so as to give any third person any right of subrogation or action over against [sic] any Party.

Paragraph 12.8 disclaims the parties' intent to confer, either expressly or by implication, any rights to others.  In <u>Laeroc Waikiki Parkside</u>, the Hawai`i Supreme Court cited a similar contract provision disclaiming third parties as evidence that the contracting parties did not intend to confer any rights to alleged intended third-party beneficiaries.  115 Hawai`i at 215 n.15, 166 P.3d at 975 n.15.

The Court is not persuaded by Plaintiffs' argument that the indemnity provision necessarily applied to Seabright because the LHWCA required Brewer to have workers' compensation insurance.  Plaintiffs insist that 33 U.S.C. § 932 of the LHWCA "requires stevedore/employers such as Brewer and Matson/BIS to obtain workers' compensation insurance[.]"  [Mem. in Opp. at 5.] As Plaintiffs argue in the opening lines of their Memorandum in Opposition:

> [A]s a matter of federal law, [the LHWCA,] both

20

> Brewer and Matson were required to obtain workers
> [sic] compensation insurance covering injury
> claims by the longshoremen/employees.  Thus, ***any
> indemnity dollars that either Brewer or Matson
> might seek from, or pay to, the other under the
> indemnity provision in connection with an employee
> claim would, by law, necessarily be borne in the
> first instance by their respective*** [LHWCA]
> ***insurers***.

[Id. at 1-2 (emphasis in original).]  In support of this

argument, Plaintiffs quote the first part of § 932(a), which

provides that "[e]very employer shall secure the payment of

compensation under the chapter – (1) By insuring and keeping

insured the payment of such compensation with any stock company

or mutual company or association, or with any other person or

fund . . ." as authorized by § 932(a)(1)(A)-(B).

     While employers like Brewer and Matson may satisfy §

932(a)'s "security for compensation" requirement by obtaining

insurance, § 932(a)(2) offers employers an alternative option.

Under § 932(a)(2), employers may secure payment of compensation

by "furnishing satisfactory proof to the Secretary [of Labor] of

his financial ability to pay such compensation and receiving an

authorization from the Secretary [of Labor] to pay such

compensation directly."  In other words, an employer may provide

proof of its own financial ability to pay compensation in lieu of

purchasing insurance.  See Simon v. Intercontinental Transp.

(ICT) B.V., 882 F.2d 1435, 1143 n.3 (9th Cir. 1989) ("A stevedore

may meet the security requirement either by insuring or by

furnishing proof of ability to pay compensation directly."
(citing 33 U.S.C. § 932(a))); see also Boating Indus. Ass'ns v.
Marshall, 601 F.2d 1376, 1378 (9th Cir. 1979) ("The LHWCA
requires employers whose employees are engaged in 'maritime
employment' to secure the payment of compensation provided for by
the [LHWCA] either through insurance or by proof of financial
ability to act as a self-insurer." (footnote omitted)).  The
contracting parties, therefore, need not have intended to
implicate Seabright – or any insurer for that matter – in
assenting to the Agreement's indemnity provision.

Even assuming, _arguendo_, that Brewer was obligated to
carry workers' compensation insurance in accordance with §
932(a)(1) due to an inability to adequately self-insure under §
932(a)(2), the Court is not convinced that the contracting
parties intended for Seabright to be an intended third-party
beneficiary under the Agreement.  Since the LHWCA does not
specify the manner in which insurance under § 932(a)(1) must be
provided, employers like Brewer are free to enter into policies
in which they must pay a certain amount of compensation and
benefits before triggering coverage.  See, e.g., Leblanc v. W-
Indus. of La., LLC, Civil Action No. 07-1495, 2009 WL 911014, at
*3 (E.D. La. Apr. 1, 2009) (explaining that under the LHWCA, an
employer can self-insure in whole or in part) (citing 33 U.S.C. §
932).  In such cases, an indemnity provision such as the one in

Paragraph 5.3 need not automatically confer intended third-party
beneficiary status to an employer's insurer in order to carry
meaning.

In summary, the Agreement contains no "virtual express
declaration to overcome the presumption that the parties
contracted only for themselves." Ass'n of Apartment Owners of
Newton Meadows, 115 Hawai`i at 272, 167 P.3d at 265 (citation and
quotation marks omitted). Plaintiffs, moreover, fail to identify
any language in the indemnity provision that makes any reference
to Seabright. While at least one party, Brewer, was aware that
Seabright served as its workers' compensation insurer when the
parties entered into the Agreement, it is not enough that the
parties – or, in this case, a single party – knew, expected, or
even intended that Seabright may benefit from the indemnity
clause. See id. Thus, there is no evidence that the parties
intended to directly benefit Seabright. The Court therefore
FINDS that Seabright does not have standing to bring the breach
of contract or equitable indemnity claims as an intended third-
party beneficiary.

## 2. Assignee Status

Plaintiffs argue that Seabright also has standing to
bring the instant claims because of its status as a Brewer
"assign". Plaintiffs argue that "Seabright certainly is an
'assign' of Brewer with regard to the 'Property Employees'

23

indemnity provision" because "[t]he standard workers'
compensation policy that Brewer obtained from Seabright includes
a provision by which Brewer contractually assigned its rights to
Seabright to recover from third-parties [sic] any payments made
under the policy." [Mem. in Opp. at 14 (citation omitted).]
Plaintiffs reason that, due to this assignment, Seabright is
entitled to any recovery rights subsequently acquired by Brewer,
including the indemnity rights conferred by Matson to Brewer
under the Agreement. [Id. at 14-15.]

Defendants reject Plaintiffs' assignment argument,
contending that Seabright is not a Brewer assignee under the
Agreement by virtue of the Insurance Policy. [Reply at 10.]
Defendants argue that the Agreement's failure to mention
Seabright, even though the Insurance Policy was in effect when
Matson and Brewer entered into the Agreement, is evidence that
the parties did not intend to assign Brewer's indemnity rights to
Seabright. Moreover, Defendants argue that "Brewer had no
contract rights to assign at the time the insurance policy was
issued" because its rights acquired under the Agreement did not
yet exist. [Id. at 10-11.]

Although the Hawai`i courts have yet to examine the
assignment issue presently before this Court, the Hawai`i Supreme
Court has consistently invoked the Restatement (Second) of
Contracts in analyzing matters of contract law. See, e.g., Jou

24

v. Dai-Tokyo Royal State Ins. Co., 116 Hawai`i 159, 168-69, 172
P.3d 471, 480-81 (2007) (adopting the Restatement (Second) of
Contract's guidelines for determining when a party is an intended
third-party beneficiary); Found. Int'l, Inc. v. E.T. Ige Constr.,
Inc., 102 Hawai`i 487, 497-98, 78 P.3d 23, 33-34 (2003)
(embracing the Restatement (Second) of Contract's standard for
settling misunderstandings as to a contract term).  This Court,
therefore, turns to the Restatement (Second) of Contracts for
guidance on the assignment of contract rights.

Section 317(1) of the Restatement (Second) of Contracts
provides, in relevant part: "[a]n assignment of a right is a
manifestation of the assignor's intention to transfer it by
virtue of which the assignor's right to performance by the
obligor is extinguished in whole or in part and the assignee
acquires a right to such performance."  Contractual rights may be
assigned unless:

> (a) the substitution of a right of the assignee
> for the right of the assignor would materially
> change the duty of the obligor, or materially
> increase the burden or risk imposed on him by his
> contract, or materially impair his chance of
> obtaining return performance, or materially reduce
> its value to him, or
> (b) the assignment is forbidden by statute or is
> otherwise inoperative on grounds of public policy,
> or
> (c) assignment is validly precluded by contract.

Restatement (Second) of Contracts § 317(2).[8]

The Restatement (Second) of Contracts also provides for the assignment of future rights. Under the Restatement (Second) of Contracts § 321(2), parties may assign future rights where the assignment concerns "right[s] expected to arise under a contract not in existence . . . ." In such cases, the "purported assignment . . . operates only as a promise to assign the right when it arises and as a power to enforce it." Id.

In the instant case, Brewer obtained a workers' compensation insurance policy from Seabright with coverage effective beginning December 1, 2003. [Insurance Policy at SEA.SOA 0148.] Plaintiffs insist that a policy provision entitled "Recovery From Others" operated as an assignment of recovery rights from Brewer to Seabright. [Mem. in Opp. at 14.] The provision states: "We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them." [Insurance Policy at SEA.SOA 0137.] This

_____

[8] In examining the validity of an assignment in AIG Hawaii Ins. Co. v. State Farm Ins. Co., No. 27789, 2008 WL 4539335, at *4 (Haw. Ct. App. Oct. 8, 2008), the Intermediate Court of Appeals quoted verbatim § 317 of the Restatement (Second) of Contracts. Since AIG Hawaii Insurance Co. is an unpublished dispositional order dated after July 1, 2008, the Court cites the case for its persuasive, but not precedential, value. See Haw. R. App. P. 35(c)(2).

26

provision appears to be a valid assignment of presently-held rights under § 317(1) and not an assignment of future rights under § 321(2).  Brewer clearly manifests an intent to transfer to Seabright its rights to recover its payments from those liable for injuries, but there is no mention of future rights, let alone "right[s] expected to arise under a contract not in existence . . . ." § 321(2).

Since none of the parties dispute this assignment and it does not appear to implicate any of the limitations imposed by § 317(2), the key issue is: can an assignment of rights be applied prospectively so as to include similar rights acquired by the assignor at a later time?  In other words, do the indemnity rights conferred by Matson to Brewer in the Agreement automatically transfer to Seabright due to Brewer's earlier assignment of recovery rights?

Under Hawai`i law, "[a]n assignment operates to place the assignee in the shoes of the assignor, and provides the assignee with the same legal rights as the assignor had before assignment." <u>Fireman's Fund Ins. Co. v. AIG Hawai`i Ins. Co.</u>, 109 Hawai`i 343, 349, 126 P.3d 386, 392 (2006) (citations, quotation marks, and emphasis omitted) (alteration in original). As a result, under <u>Fireman's Fund Insurance</u>, Brewer transferred to Seabright its rights as they existed prior to the assignment. Brewer's subsequently-acquired indemnity rights were not a part

of that transfer and therefore cannot be enforced by Seabright.
The Court is unaware of any Hawai`i cases that have expanded this
principle to include legal rights that the assignor acquired
after the assignment.

Based on the foregoing, the Court FINDS that Brewer
assigned its recovery rights to Seabright as they existed at the
time the parties entered into the Insurance Policy.  The Court
further FINDS that the assigned recovery rights do not extend to
the indemnity rights conferred by Matson to Brewer in the
Agreement.  The Court therefore CONCLUDES that Seabright lacks
standing to pursue its breach of contract claim because it has no
enforceable contract rights against Matson, but Seabright has
standing as an assignee to pursue its equitable indemnity claim
to the extent that the claim stems from the rights assigned by
Brewer to Seabright under the Insurance Policy.  Since amendment
of Seabright's breach of contract claim would be futile, the
Court DISMISSES the claim WITH PREJUDICE.

### 3.  <u>Alternative Grounds</u>

Plaintiffs have not articulated any alternative bases
for standing for Seabright to bring its equitable indemnity
claim.  Since the party invoking federal jurisdiction has the
burden of establishing standing, see <u>Lujan v. Defenders of
Wildlife</u>, 504 U.S. 555, 561 (1992), the Court FINDS that
Seabright has standing to assert its equitable indemnity claim

28

only insofar as the equitable indemnity claim arises from the rights assigned to it by Brewer under the Insurance Policy.

## III. **Applicability of the LHWCA's Exclusive Remedy Provision**

Defendants argue that, even if the Court finds that Plaintiffs have standing, their claims are barred by the LHWCA, which serves as the "exclusive remedy in cases brought as a result of longshore injuries." [Mem. in Supp. of Motion at 12.] In support of this argument, Defendants cite § 905(a) of the LHWCA, which provides in relevant part: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . . ." 33 U.S.C. § 905(a). Defendants note that, "[w]hile courts have held that certain third party [sic] claims can survive, 'only contract-based indemnity could overcome the "on account of" language of § 905(a).'" [Reply at 12 (quoting <u>Zapico v. Bucyrus-Erie Co.</u>, 579 F.2d 714, 722 (2d Cir. 1978)) (some citations omitted).] Defendants contend, therefore, that Seabright's claims are barred "unless it can demonstrate a contractual duty of indemnity that brings the claims outside the LHWCA." [<u>Id.</u> at 13.]

Plaintiffs argue that the § 905(a) exclusive remedy provision does not apply because they are seeking to enforce

Matson's contractual duty to Seabright. [Mem. in Opp. at 17.]

Plaintiffs insist that, while § 905(a) "limits a stevedore

employers' [sic] exposure for tort damages 'on account of' an

employee's injury or death[,]" it "is not a license for a

stevedore to breach its contractual obligations to third-parties

[sic]." [Id. at 18.] In support of this position, Plaintiffs

cite several district court decisions finding that § 905 may be

overcome when the action is based on the breach of an independent

duty. [Id. at 17-18 (citing Burnett v. A Botacchi S.A. de

Navegacion, 882 F. Supp. 1050, 1053 (S.D. Fla. 1994); Inland Oil

& Transport Co. v. City of Mount Vernon, 624 F. Supp. 122, 125

(S.D. Ind. 1985); Passman v. Rigging Int'l Inc., 1999 U.S. Dist.

LEXIS 9046, *9 (E.D. Pa. 1999)).]

Neither party has cited authority applying § 905(a)'s

exclusivity provision to facts analogous to those presented here,

nor has the Court found any decisions by the Ninth Circuit that

are particularly on point. The scope of § 905(a)'s exclusivity

provision was examined, however, by the District Court for the

Southern District of California in Johnson v. National Steel &

Shipbuilding Co., 742 F. Supp. 1062 (S.D. Cal. 1990). In

assessing whether § 905(a) permitted third parties to bring

claims against LHWCA employers, the court explained:

> Section 905(a) states that the liability of the
> employer "shall be exclusive . . . to the
> employee, his legal representative, husband or
> wife . . . and anyone entitled to recover damages

> from such employer at law or in admiralty *on*
> *account of such injury or death* . . . ." 33
> U.S.C.A. § 905(a) (emphasis added). The majority
> of cases have reasoned that nonvessel third party
> actions based on contractual indemnity are not
> barred by the statute because they do not arise
> "on account of" the injury or death of the
> employee, the actions are on account of the
> express or implied indemnity contract between the
> employer and the third party. <u>See, e.g.</u> <u>Pippen</u>,
> 661 F.2d at 386-87; <u>Zapico v. Bucyrus-Erie Co.</u>,
> 579 F.2d 714, 721-22 (2nd Cir. 1978); <u>Horton</u>, 616
> F. Supp. at 131; <u>Holden v. Placid Oil Co.</u>, 473 F.
> Supp. 1097, 1099-1100 (E.D. La. 1979).

<u>Johnson</u>, 742 F. Supp. at 1066 (alterations in original). The

court's finding in <u>Johnson</u> conforms with Plaintiffs' position

that § 905(a) can be overcome where the action is "on account of"

an independent duty owed by the employer to a third party.

The Hawai`i Supreme Court made a similar finding in

<u>Kamali v. Hawaiian Electric Co.</u>, 54 Haw. 153, 504 P.2d 861

(1972), where the court examined whether the exclusive liability

provision of Hawaii's Workers' Compensation Law, Hawai`i Revised

Statutes Chapter 386, precluded a third-party claim for

indemnity. Hawai`i Revised Statutes § 386-5 provides:

> The rights and remedies herein granted to an
> employee or the employee's dependents on account
> of a work injury suffered by the employee shall
> exclude all other liability of the employer to the
> employee, the employee's legal representative,
> spouse, dependents, next of kin, or anyone else
> entitled to recover damages from the employer, at
> common law or otherwise, on account of the injury,
> except for sexual harassment or sexual assault and
> infliction of emotional distress or invasion of
> privacy related thereto, in which case a civil
> action may also be brought.

The court in <u>Kamali</u> concluded that although

> the language of HRS § 386-5 seems to limit all
> liability on the part of an employer, we are of
> the opinion that the exclusive liability provision
> precludes only those actions which arise 'on
> account' of the employee's injury.  A third party
> claim for indemnity is not based on the employee's
> injury but is for reimbursement based upon
> contract or some other independent duty existing
> between indemnitor and indemnitee.

54 Haw. at 159, 504 P.2d at 865 (citing <u>Ryan Stevedoring Co. v.</u>

<u>Pan-Atlantic Steamship Corporation</u>, 350 U.S. 124, 76 S. Ct. 232,

100 L. Ed. 133 (1955)).

Since Seabright's equitable indemnity claim arises "on

account of" an independent third-party indemnity obligation

allegedly owed by Matson to Seabright, the Court FINDS that the

LHWCA's exclusive remedy provision does not bar Seabright from

bringing that claim.

**IV.  Equitable Indemnity**

Seabright's surviving claim seeks equitable

indemnification.  In their Complaint, Plaintiffs assert that they

are entitled to equitable indemnification because of Defendants'

failure to reimburse Seabright for its payments to Soares.

[Complaint at ¶¶ 30-31.]  Plaintiffs argue that "[w]ithout

reference to the [Agreement], Seabright . . . has a right of

equitable indemnity directly against Matson[.]"  [Mem. in Opp. at

16 (citing Complaint at page 7; <u>Hydo-Air Equipment, Inc. v. Hyatt</u>

<u>Corp.</u>, 852 F.2d 403, 406 (9th Cir. 1988)).]

32

Defendants contend that Seabright's equitable indemnification claim is not actionable because indemnity claims are fundamentally about fault – a non-issue in the instant case. [Reply at 13-14.] Defendants argue that "[t]his case involves a ruling based on the Last Responsible Employer doctrine under the LHWCA," and that the "statutory scheme of the LHWCA is predicated on assigning liability 'irrespective of fault as a cause for the injury.'" [Id. at 14 (quoting 33 U.S.C. § 904(b)).] Defendants note, furthermore, that ALJ Etchingham found that "'*neither* employer has persuaded me that it is more likely than not that the opposing employer is liable as the responsible party.'" [Id. (quoting Admin. Order at 27) (emphasis added by Defendants).]

According to the Hawai`i Supreme Court, indemnification is available when "'two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both[.]'" Brooks v. Dana Nance & Co., 113 Hawai`i 406, 416, 153 P.3d 1091, 1101 (2007) (quoting Restatement (Second) of Torts § 886B(1)). Under those circumstances, the person discharging the liability "'is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.'" Id. (quoting Restatement (Second) of Torts § 886B(1)) (emphasis omitted).

The Court was unable to identify any Hawai`i jurisprudence on claims of equitable indemnity. When a federal

court is confronted with a novel issue of state law, the court must attempt to predict how the state's highest court would decide the issue. See Ariz. Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995) (citation omitted). The Court therefore turns to more general authorities relied on by the Hawai`i Supreme Court in evaluating issues of indemnity. One such authority is American Jurisprudence, see, e.g., Hawaiian Ins. & Guar. Co. v. Higashi, 67 Haw. 12, 13, 675 P.2d 767, 769 (1984), which explains that indemnity can be based on: "(1) an express contract; (2) a contract implied-in-fact; or (3) equitable concepts arising from the tort theory of indemnity, often referred to as a contract implied-in-law[,]" 41 Am. Jur. 2d Indemnity § 2 (footnote omitted). For an equitable indemnity claim to succeed, a claimant "must plead and prove that: (1) he or she has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter." Id. at § 20 (footnote omitted). Nearly identical requirements have been adopted by the Nevada Supreme Court, Rodriguez v. Primadonna Co., 216 P.3d 793, 801 (Nev. 2009) (citation omitted), the Oregon Supreme Court, Stovall v. State ex rel. Oregon Dep't of Transp., 922 P.2d 646, (Or. 1996) (citation omitted), and the Court of Appeals of Arizona, MT Builders, L.L.C. v. Fisher Roofing, Inc., 197 P.3d 758 (Ariz. Ct.

App. 2008).

    The Court also turns to the Ninth Circuit for guidance on the doctrine of equitable indemnity.  As explained by the Ninth Circuit, "[t]he principle of implied equitable indemnity is designed to prohibit one from profiting by his own wrong at the expense of one who is either free from fault or negligent to a lesser degree."  Hydo-Air Equip., 852 F.2d at 406 (citing Santisteven v. Dow Chemical Company, 506 F.2d 1216, 1219 (9th Cir. 1974)).  The "ultimate goal" is to do "what is fair or just[,]" and "implied equitable indemnity may be entirely proper if it is simply fairer to shift the burden of loss."  Id. (citations omitted).

    Although ALJ Etchingham assigned liability without designating one party more at fault than the other, the Court is not persuaded that such a finding prevents Seabright from claiming equitable indemnity in the instant case.  The Ninth Circuit instructs courts not to apply strict standards in reviewing equitable indemnity claims and explains that such claims may be viable beyond "well-defined situations involving joint tortfeasors, principal and agent, or employer and employee."  Id. at 405-06.  Whether Seabright can satisfy the elements of equitable indemnity given ALJ Etchingham's findings is a disputed issue of material fact that counsels against dismissal of the claim.  See Fleming v. Pickard, 581 F.3d 922,

925 (9th Cir. 2009).

Defendants argue that, even if Plaintiffs' equitable indemnity claim survives, Plaintiffs are prohibited from seeking attorneys' fees and legal costs by the American Rule. [Mem. in Supp. of Motion at 12.] Defendants argue that "[i]t is well-established that as a general matter, under the 'American Rule' each party pays for its *own* legal fees and expenses." [Reply at 14 (citing <u>Perdue v. Kenny A.</u>, 130 S. Ct. 1662, 1671 (2010)) (emphasis in original).] They explain that, while 33 U.S.C. § 928(a) of the LHWCA allows employee-claimants to recover costs and fees associated with their claim, there is no such statutory authorization for employers. [Mem. in Supp. of Motion at 13 (citing <u>Medrano v. Bethlehem Steel Corp.</u>, 23 BRBS 223, 226 (1990)).] Plaintiffs have not addressed this argument.

According to the Hawai`i Supreme Court, "[n]ormally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent." <u>In re Water Use Permit Applications</u>, 96 Hawai`i 27, 29, 25 P.3d 802, 804 (2001) (citation and quotation marks omitted).

The only provision in the LHWCA authorizing the recovery of attorneys' fees is 33 U.S.C. § 928, which grants

employee-claimants, but not employers or their insurance companies, the right to seek attorneys' fees in limited circumstances.  See Dyer, 563 F.3d at 1047 ("The LHWCA provides that a successful claimant is entitled to recover attorney's fees from his or her employer in two situations: (1) when the employer denies liability out-right . . . and (2) when the employer accepts liability and pays or tenders some compensation, but a controversy develops over additional compensation[.]" (citing 33 U.S.C. § 928(a) & (b))).  Regulations implementing § 928 essentially provide employee-claimants with the same form of relief.  See id. (citing 20 C.F.R. § 702.134).  Since there are no contractual agreements, party stipulations, or applicable court rules regarding litigation expenses in the instant case, such expenses can only be sought if an equitable exception applies.

One such exception recognized by Hawai`i courts concerns wrongful acts of a defendant that caused a plaintiff to litigate with a third party.  As explained by the Hawai`i Supreme Court in Lee v. Aiu:

> where the wrongful act of the defendant . . . has involved the plaintiff in litigation with [another], or placed [the plaintiff] in such relations with others as makes it necessary to incur expenses to protect his [or her] interest, such expenses, including attorneys' fees, should be treated as the legal consequences of the original wrongful act, and may be recovered as damages.

85 Hawai`i 19, 32-33, 936 P.2d 655, 668-69 (1997) (quoting

Uyemura v. Wick, 57 Haw. 102, 108-09, 551 P.2d 171, 176 (1976))

(some citations omitted) (some alterations in original). Thus,

the Hawai`i Supreme Court concluded in Lee that, "where the

wrongful act of a defendant causes a plaintiff to engage in

litigation with a third party in order to protect his or her

rights or interests, attorney's fees incurred in litigating with

that third party may be chargeable against the wrongdoer as an

element of the plaintiff's damages." Id. at 33, 936 P.2d at 669

(citing Uyemura, 57 Haw. at 110, 551 P.2d at 176) (footnote

omitted). The court cautioned, however, that an award of

attorneys' fees and costs under this exception does not encompass

the costs necessary to establish the right to such an award. Id.

at 33-34, 936 P.2d at 669-70.

In order to recover under this "wrongful act of a

defendant" exception, the party pursuing the attorneys' fees must

establish four elements:

> (1) that the plaintiff had become involved in a
> legal dispute either because of a breach of
> contract by the defendant, or because of
> defendant's tortious conduct, that is, that the
> party sought to be charged with the fees was
> guilty of a wrongful or negligent act or breach of
> agreement; (2) that the litigation was with a
> third party, not with the defendant from whom the
> fees are sought to be recovered; (3) that the
> attorneys' fees were incurred in that third-party
> litigation; and (4) whether the fees and expenses
> were incurred as a result of defendant's breach of
> contract or tort, that they are the natural and
> necessary consequences of the defendant's act,

38

> since remote, uncertain, and contingent
> consequences do not afford a basis for recovery[.]

Id. (citations omitted) (alteration in original).

Although the Hawai`i Supreme Court has only applied this exception in cases involving claims of tortious interference with contractual relations, implied misrepresentations, and fraudulent concealment, see Lee at 85 Hawai`i at 33, 936 P.2d at 669; Uyemura, 57 Haw. at 110, 551 P.2d at 176, this Court sees no reason why it should not be available where a qualifying party seeks equitable indemnity, see Ariz. Elec. Power Coop., 59 F.3d at 991 (citation omitted).  Applying the exception to equitable indemnity claims presents no clear conflict with existing state law so long as the party seeking the exception can establish its elements.  The Court therefore FINDS that, under this exception, Seabright's claim for attorneys' fees and costs incurred in defending Brewer is facially plausible.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

In summary, the Court FINDS that the Complaint alleges sufficient factual matter, accepted as true for the purposes of the instant Motion, to support a claim for equitable indemnity, and that disputed issues of material fact weigh in favor of preserving the claim.  See id.; Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009) (citation omitted).  The Court further FINDS that Seabright's ability to recovery its attorneys' fees and expenses incurred in defending Brewer is permissible to the

extent it can prove that the "wrongful act of a defendant"
exception, or another exception to the American Rule, applies.

## V.    **Equitable Subrogation**

Plaintiffs raise the issue of "equitable subrogation"
for the first time in their Memorandum in Opposition.  [Mem. in
Opp. at 16.]  While Plaintiffs argue that they "specifically pled
Seabright's right of subrogation in the complaint[,]" subrogation
is only referenced in passing in its "Facts" and "First Cause of
Action (Breach of Contract)" sections.  [Complaint at ¶¶ 13, 25
("SEABRIGHT is additionally subrogated to the claims of BREWER,
under the aforementioned insurance policy issued by SEABRIGHT to
BREWER, and as a matter of law, for compensation benefits paid on
behalf of BREWER, as well as attorneys' fees and costs expended
by SEABRIGHT on behalf of BREWER.").]  Unlike Plaintiffs'
equitable indemnity claim ("Second Cause of Action (Equitable
Indemnity)"), equitable subrogation is not clearly pled as an
independent cause of action.

Although Federal Rule of Civil Procedure 8(a)(2)
requires only that a complaint include "a short and plain
statement of the claim showing that the pleader is entitled to
relief[,]" such a statement must sufficiently put the defendants
on fair notice of the claims asserted and the grounds on which
they rest.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
(2007) (citation omitted).  The Court FINDS that Plaintiffs have

failed to plead equitable subrogation in a manner that provides such notice.  The Court therefore DECLINES to review this claim.

The Court, however, GRANTS Seabright leave to amend its Complaint for the limited purpose of pleading its equitable subrogation claim.  The equitable subrogation claim must be based on facts currently alleged in the Complaint, and Plaintiffs must file their Amended Complaint no later than **May 30, 2011.**

### CONCLUSION

On the basis of the foregoing, Defendants' Motion for Judgment on the Pleadings or for Summary Judgment, filed on January 24, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as the Court DISMISSES WITH PREJUDICE Plaintiffs' breach of contract claim and equitable indemnity claim as to Plaintiff Brewer, and Plaintiffs' breach of contract claim as to Seabright.  The Motion is DENIED insofar as Plaintiff Seabright seeks unreimbursed compensation and medical benefits, plus interest owed, as well as attorneys' fees and legal costs incurred in defending Brewer, plus interest owed, through its equitable indemnity claim.  The Court GRANTS Seabright leave to amend its Complaint as specifically permitted by this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 28, 2011.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BREWER ENVIRONMENTAL INDUSTRIES, LLC, ET AL. V. MATSON TERMINALS, INC., ET AL; CIVIL NO. 10-00221 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**