IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SEABRIGHT INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>MATSON TERMINALS, INC.,<br>MATSON NAVIGATION COMPANY,<br>INC.,<br><br>Defendants. | CIVIL NO. CV 10 00221 LEK KSC<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

**MEMORANDUM IN SUPPORT OF MOTION**

## I.   INTRODUCTION

Following a ruling by this Court that dismissed the bulk of the original

claims brought by Plaintiffs in this case, Plaintiff Seabright Insurance Co.

(hereinafter "Seabright") was given another chance to plead a viable case against

Defendants Matson Terminals, Inc. and Matson Navigation Company, Inc.'s

(hereinafter "Matson") for attorneys' fees.  Yet again, Seabright is trying to shift

onto Matson its contractual duty to defend Brewer at its expense.  And, yet again,

Seabright has failed in its attempt.

In its ruling on April 28, 2011, the Court dismissed with prejudice all

claims brought by the Brewer Plaintiffs in this action.  *See* Order Granting in Part

and Denying in Part Defendants' Motion for Judgment on the Pleadings or for Summary Judgment, 4/28/11; Document No. 46 at p. 15 (hereinafter "Order"). The Court also dismissed with prejudice Seabright's breach of contract claims. *See* Order at p. 28.

In its Amended Complaint filed on May 20, 2011, Seabright added a claim for Equitable Subrogation and removed its allegations relating to the $1,700 in Longshore Act compensation and medical benefits Matson allegedly owed. *See* Plaintiff's First Amended Complaint, 5/20/11; Document No. 49 (hereinafter "Amended Complaint").

Thus this case has now been distilled to nothing more than a dispute about attorneys' fees—an attempt by Seabright to circumvent the statutory structure and purpose of the Longshore Act, subvert the well-established American Rule, and shift a burden it was contractually obligated to fulfill onto Matson's shoulders based on equitable claims having a basis in neither fact nor law. This attempt must be rejected as a matter of law.

## II.    STATEMENT OF RELEVANT FACTS

The basic facts of this case are straightforward and they are not in dispute. On November 10, 2004, Kyle Soares suffered an injury to his lower back while working as a longshoreman for H&T Stevedoring, a subsidiary of Brewer Environmental Holdings ("Brewer"). *See* Plaintiff's Amended Complaint

2

(hereinafter "Amended Compl.") at ¶ 5.

Prior to the injury, Seabright Insurance Company ("Seabright") had issued an insurance policy to Brewer which obligated Seabright to cover all worker's compensation claims brought by Brewer's employees. *See* Seabright Insurance Policy (hereinafter "Policy") at p. SEA.SOA 0136, attached as Exhibit A. The policy also required that Seabright would provide all necessary legal representation related to any such claims at Seabright's cost and expense. *Id.* It is undisputed that Matson was never a party or signatory to this agreement.

On January 3, 2005, Soares returned to work full-time for Brewer following a medical release by his treating physician. *See* Amended Compl. at ¶ 12.

On January 31, 2005, Brewer entered into an Asset Purchase Agreement ("APA") in which Matson purchased, from Brewer, H&T Stevedoring, a business providing stevedoring services on the island of Hawaii. *See* Amended Compl. ¶ 9. At that time, Soares became an employee of Matson. *See id.* at ¶ 11.

After May 21, 2005, Soares stopped working for Matson. *See id.* at ¶ 12.

On June 10, 2005, Soares filed a claim solely against Brewer and Seabright for compensation under the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *See id.* at ¶ 13. The claim expressly related to

3

the November 2004 injury.  *See id.*  Soares continued to press that claim

throughout the case and consistently testified that he did not sustain any specific

injury after November 2004 and that his back condition remained unchanged from

November 2004 until his last day of work on May 21, 2005.  *See* Opinion of Judge

Etchingham (hereinafter "Opinion") attached as Ex. B at p.p. 9, 20.

Soares did not file a LHWCA claim against Matson until February 21,

2006.  *See* Amended Compl. at ¶ 13.  That claim sought compensation due to

cumulative trauma to his lower back.  *See id.*

Both Matson and Brewer disputed full liability for Soares' claims and

the matter came before Administrative Law Judge Gerald Etchingham of the

Federal Office of Administrative Law Judges.  *See id.* at ¶ 16.  Judge Etchingham

ruled that Matson was the "Last Responsible Employer" and thus it was liable to

Soares for his compensation and medical benefits for the time period after he

began working for Matson on January 31, 2005.  *See* Ex. B ("Opinion") at p. 28-

29.  Although attorneys' fees were awarded to Soares, no attorneys' fees were

awarded to Brewer or Seabright in Judge Etchingham's Order and neither Brewer

nor Seabright appealed that ruling.  *Id.*

As a result of the ruling, Matson paid the compensation and medical

benefits required, which included reimbursement to Seabright of benefits it had

paid to Soares under the LHWCA.

## III.   STANDARD OF REVIEW

In ruling on a Motion for Judgment on the Pleadings under Rule 12(c), a court shall grant the motion when, "taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997). While the court's review is limited to the pleadings, any documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings," are considered a part of the pleadings. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998). To the extent any matters outside the pleadings are presented, the Court shall treat the motion as one for summary judgment under Rule 56. *See* FRCP 12(d).

"Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this initial burden, the non-moving party must offer "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court reviews the evidence in the light most favorable to the non-moving party. *See T.W. Elec. Serv.,*

*Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987).

## IV.   ARGUMENT

After the most central of Seabright's claims against Matson—that Seabright was owed a contractual duty on a contract it was never a party to—was dismissed by this Court, Seabright was left to abruptly shift gears in an attempt to salvage its case.  While Seabright has alleged new and different theories of liability in its Amended Complaint, those claims suffer from similarly fatal flaws.

First, Seabright's equitable state law claims are preempted by the LHWCA and, therefore, must be dismissed.  Second, even if preemption did not serve as a total bar to Seabright's claims, they still would fail as a matter of law because they have not been adequately pled.  Finally, the American Rule also bars these claims as the undisputed facts establish that the wrongful act exception does not apply here.

### A.   The LHWCA Preempts Seabright's Claims

Based on the Supremacy Clause of the United States Constitution it has long been established that Congress has the power to preempt state law.  U.S. Const. Art. IV, cl. 2; *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  That preemption power can arise in one of three ways.[1]  The first

---

[1] Courts have noted that the categories of preemption are not "rigidly distinct" and thus some flexibility is required in applying them.  *See English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n.5 (1990).

is as a result of an express provision of preemption in a federal statute. *See, e.g.*, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95-98 (1983). The second is when it is evident that Congress intended to "occupy the field" in that area of law or regulation. *See Crosby*, 530 U.S. at 372. And the third is when state law actually conflicts with federal law. *Id.* This actual conflict can be demonstrated either by showing that it is impossible for a private party to comply with both state and federal law, *see, e.g.*, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or by showing that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 66-67 (1941).

It is undisputed that this case arises out of an agency proceeding under the Longshore and Harbor Workers' Compensation Act ("LHWCA") based on the also undisputed fact that Soares was a covered employee under that Act. Courts have previously barred state law claims as being preempted by the LHWCA. *See, e.g.*, *Talik v. Federal Marine Terminals, Inc.*, 885 N.E.2d 204, 212 (Ohio 2008) (holding that the LHWCA preempted plaintiff's state tort law claims because they acted as an obstacle to the purposes of the LHWCA), *cert. denied*, 129 S. Ct. 192 (2008); *see also Anaya v. Traylor Bros., Inc.*, 478 F.3d 251, 255 (5th Cir. 2007) (barring state law claim because LHWCA provided exclusive remedy), *cert. denied*, 552 U.S. 814 (2007). Seabright's claims here are state law equitable

claims and both are preempted by the LHWCA both as a matter of express

preemption, as well as conflict preemption.

    **1.**    **Seabright's Equitable Claims are Expressly Preempted by the LHWCA**

As discussed in Matson's prior Motion for Judgment on the Pleadings

or for Summary Judgment, the LHWCA contains an exclusivity provision which

limits employer liability.  Section 905 of the LHWCA expressly states that "[t]he

liability of an employer prescribed in section 4 shall be exclusive and in place of

all other liability of such employer to the employee, his legal representative . . . and

anyone otherwise entitled to recover damages from such employer at law or in

admiralty on account of such injury or death."  33 U.S.C. § 905(a).  In this way,

Congress has placed an express limitation on the kinds of claims that can be

brought relating to longshore injuries.

While it is true that courts have sometimes allowed certain types of

state-law claims to be raised, the weight of authority limits such instances to cases

wherein the plaintiff alleges an independent *contractual* duty that has been

breached.  *See, e.g.*, *Zapico v. Bucyrus-Erie Co.*, 579 F.2d 714, 722 (2d Cir. 1978)

("only contract-based indemnity could overcome the 'on account of' language of

§ 905(a)"); *see also White v. Texas Eastern Transmission Corp.*, 512 F.2d 486, 489

(5th Cir. 1975) (stating that without a contractual obligation, "there exists no

underlying tort liability upon which to base a claim for indemnity against the employer"); *Oman v. Johns-Manville Corp.*, 482 F. Supp. 1060, 1068 (E.D. Va. 1980) (noting that courts have generally held that § 905(a) bars recovery for non-contractual indemnity and citing cases); *St. Julien v. Diamond M. Drilling*, 403 F. Supp. 1256, 1259 (E.D. La. 1975) (stating that § 905(a) bars claims for non-contractual indemnity).

In its prior Order, this Court cited to the case of *Johnson v. National Steel & Shipbuilding Co.*, 742 F. Supp. 1062 (S.D. Cal. 1990), for the proposition that third-party claims against employers are not always barred by the LHWCA. But even in *Johnson*, the court there acknowledged that generally only "third party actions based on *contractual indemnity* are not barred by the statute." 742 F. Supp. at 1066. In other words, under the prevailing view, Seabright's claim is barred by § 905(a) unless it can demonstrate a *contractual* duty that brings the claim outside the LHWCA context.

In making its ruling, this Court stated that "§ 905(a) can be overcome where the action is 'on account of' an independent duty owed by the employer to the third party." Order at p. 31. Based on this, the Court found that the exclusivity provision of § 905(a) did not bar Seabright from bringing its claim. While Matson reserves the right to challenge that ruling if necessary, and at a later date, Matson does not wish to be viewed here as disregarding it. Rather, Matson merely

requests that the Court revisit that position in light of the following new circumstances brought by the new posture of the case and the amended claims.

First, Seabright has now limited its claims to attorneys' fees and costs by removing any allegation of any outstanding compensation benefits. *See* Amended Compl. Additionally, this Court definitively ruled that Seabright cannot base its claims upon the Asset Purchase Agreement between Matson and Brewer. *See* Order at p. 28. Instead, Seabright can only make claims stemming from the rights assigned to it under Brewer's Insurance Policy. *Id.* But the Court also ruled that any such assigned rights are limited to the rights Brewer possessed at the time of the issuance of the insurance policy—in other words the rights Brewer had before ever even entering into a contract with Matson. *Id.* at 27-28. Seabright fails to allege the basis for *any* such independent duty that would give rise to a claim for attorneys' fees against Matson, nor could any such duty be alleged. The legal fees incurred by Seabright arose out of the agency proceeding under the LHWCA. If those fees are deemed to be "on account of" that claim, they are barred by the LHWCA. If they are not "on account of" the injury, Seabright must allege an independent duty to support the claim. In two attempts, they have failed to do so. As a result, those claims must be dismissed as a matter of law.

Second, this Court's analysis in the prior order was limited to the claim of equitable indemnity. Plaintiff has now added an additional claim for

equitable subrogation.  Matson is not aware of any authority allowing for an

equitable subrogation claim for attorneys' fees resulting from a Longshore Act

case.  While some cases such as *Johnson* speak of implied rather than contractual

*indemnity*, none allow for equitable subrogation.  And in any event, no such claim

is possible on these facts.  As with the equitable indemnity claim, Seabright fails to

allege the source of any independent duty such that the claim could even arguably

be brought outside the realm of the LHWCA.  Thus it too must be dismissed as a

matter of law.

In short, to the extent these claims arise under the LHWCA, they are

expressly preempted.  To the extent they are outside of the LHWCA, Seabright

must allege an independent duty to support the remedy they seek.  This they have

not, and indeed cannot, do.

### 2.   Seabright's Equitable Claims are Preempted Because They Conflict with the Purposes of the LHWCA

Even if this Court were to reject the argument that the LHWCA

expressly preempts Seabright's equitable claims, the claims still must fail because

they "stand[] as an obstacle to the accomplishment and execution of the full

purpose and objectives of Congress" in enacting the LHWCA.  *Hines*, 312 U.S. at

66-67.[2]

---

[2] It is worth noting here that in order to be preempted, a state law need not be statutory.  Rather, if the "rule of law" plaintiff is seeking would stand as an obstacle, then the lawsuit itself may be

The Supreme Court has stated that analyzing whether a state law "is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373.  The Court in *Crosby* went on to state that

> When the question is whether a Federal act overrides a state law, the entire scheme of the statute must of course be considered and that which needs must be implied is of no less force than that which is expressed.  If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power.

530 U.S. at 373 (quoting *Savage v. Jones*, 225 U.S. 501, 533 (1912)).  In other words, "the purpose of Congress is the ultimate touchstone in every preemption case."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

Here, the purpose of Congress in enacting the LHWCA is clear.  As the Supreme Court has stated, the LHWCA "was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other.  Employers relinquished their defenses to tort actions in exchange for limited and predictable liability.  Employees accept limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail."  *Morrison-Knudsen Constr. Co. v. Dir., Office of*

---

preempted.  *See Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 881 (2000) (barring suit

*Worker's Comp. Programs*, 461 U.S. 624, 635-36 (1983).  Both the text and the

legislative history of the LHWCA illustrate this intended balance and, in the

process, why the current suit upsets that balance and therefore must be preempted.

As discussed at length above, § 905(a) contains a potent exclusivity

clause seeking to limit employer liability to a single agency proceeding.  *See* 33

U.S.C. § 905(a).  This makes sense in light of the provision in § 904(b) that

"[c]ompensation shall be payable irrespective of fault as a cause of injury."  33

U.S.C. § 904(b).  As seen above, the LHWCA is a compromise in which

employers essentially concede liability even in the absence of fault, but only if it

comes in exchange for a predictable limitation on the amount of that liability.

Allowing claims to be brought in other forums takes away that predictable

limitation and thus upsets the balance as well as the efficiency of a uniform

compensation scheme.

The LHWCA extends this balance even further by expressly

addressing attorneys' fees in § 928 and only allowing them to be paid "to the

attorney for the claimant."  33 U.S.C. § 928(a).  The intention to limit attorneys'

fees to the claimant alone is also clear from the legislative history of the 1972

amendments to the LHWCA.  In both the Senate and House Reports to their

---

under state tort law because the duty it would have created would have interfered with the federal
statutory scheme).

respective bills, it makes clear that attorneys' fees may only be awarded to a successful *claimant* and that "[a]ttorneys fees may not be assessed against employers (or carriers) in other cases."  S. Rep. No. 92-1125, at 70 (1972) and H.R. Rep. No. 92-1441, at 215 (1972).  Courts have also recognized this bar on attorneys' fees in LHWCA matters.  *See Medrano v. Bethlehem Steel Corp.*, 23 BRBS 223, 226 (1990) (holding that the LHWCA "allows for the award of fees only to *claimant's* representative") (emphasis in original).

The object of such a limitation is obvious—to again maintain the balance by limiting potential liability and creating a predictable regime while also allowing a claimant, and only a claimant, to make sure his compensation is not decreased by having to pay for litigation to secure it.

Employing the same analysis, the Supreme Court in *Geier v. American Honda Motor Co., Inc.,* ruled that a lawsuit against Honda was preempted by the regulatory framework of the Federal Motor Vehicle Safety Standards.  529 U.S. 861, 867 (2000).  The Court noted that the regulatory scheme reflected a balancing of multiple different safety considerations.  *Id.* at 877.  And the Court recognized that plaintiff's attempts to enforce a different, and higher, standard through a state law tort action would, if allowed, stand as an "obstacle" to the objectives of that regulatory balance.  *Id.* at 881.  As a result, the Court held that the suit was preempted on a theory of conflict preemption.  *Id.*  That logic

14

applies with even greater force here.

The current suit represents a transparent attempt to circumvent the limitations of the LHWCA.  Compensation has been fully paid.  The LHWCA prevented Seabright from getting a fee award in the agency action, so they brought their claims here instead.  If allowed to go forward there would essentially be nothing preventing parties from seeking in actions under state law that which the LHWCA statutory scheme expressly forbids.  This would have at least two negative effects.  First, it would defeat the protections for employers which are built into the statutory bargain, thus leaving them with no defense to liability *and* no predictable limitation in exchange.  Second, it would defeat the obvious efficiency gains of having a uniform compensation system, instead opening issues up to ancillary litigation in multiple forums.

It is in exactly these circumstances that a suit must be preempted. This case unquestionably "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the LHWCA.  *See Hines*, 312 U.S. at 67.  As a result, it conflicts with federal law and is therefore preempted.

### B.    Seabright's Equitable Claims Fail as a Matter of Law

Even if Seabright's claims were not preempted by the LHWCA, they still would fail as a matter of law because they are insufficiently pled.  In order to

overcome a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  In this regard, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Seabright now alleges two claims—one for equitable subrogation and one for equitable indemnity.  *See* Amended Compl.  Neither of these causes of action satisfy the *Iqbal* standard.

### 1.    The Equitable Subrogation Claim Fails to State a Plausible Claim for Relief

In its amended complaint, Seabright asserts that through its insurance policy with Brewer, Seabright was subrogated to Brewer's rights against Matson.  *See* Amended Compl. ¶ 21.  The Amended Complaint goes on to allege that this gives Seabright the right to recover attorneys' fees that "Brewer would have been entitled to recover from Defendants."  *Id.*

However, this Court made clear in its prior Order that any assignment of rights from Brewer to Seabright must be based solely on the insurance policy and not on the APA.  *See* Order at p. 28.  Furthermore, any assignment of rights must be limited to the rights Brewer possessed at the time the policy was issued.

*Id.*  It is indisputable that Brewer did not possess *any* rights against Matson at the time the insurance policy was issued—the parties had not yet even negotiated the APA.

To the extent Brewer ever arguably had any rights to recover attorneys' fees from Matson, that right would have been based on the APA, which Seabright was never a party to, intended or otherwise.  Outside of the APA, Brewer had no rights at all because the LHWCA forbids the awarding of attorneys' fees as between employers.  *See* 33 U.S.C. § 928(a) and *Medrano*, 23 BRBS at 226.  And in any event, the American Rule would have barred any fee-shifting.

In other words, under the doctrine of equitable subrogation, Seabright might arguably be allowed to step into Brewer's shoes, *see State Farm Fire and Casualty Co. v. Pacific Rent-All, Inc.*, 90 Hawai'i 315, 978 P.2d 753 (1999), but only as those shoes existed at the time of the issuance of the insurance policy— which indisputably occurred prior to Soares' injury and prior to negotiation of the APA.  At that time, Brewer had no right of recovery against Matson for attorneys' fees or anything else.  As a result, Seabright necessarily also lacks any right of recovery.  Seabright has not alleged, nor can it, any set of facts under which it has a right of equitable subrogation entitling it to an award of attorneys' fees.  Therefore, Seabright's equitable subrogation cause of action must be dismissed as a matter of law.

**2.      The Equitable Indemnity Claim Fails to State a Plausible Claim for Relief**

In its prior Order, this Court provided a framework standard for equitable indemnity claims that requires a plaintiff to "plead and prove that: (1) he or she discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and defendant, the obligation ought to be discharged by the latter." *See* Order at p. 34 (quoting 41 Am. Jur. 2d Indemnity § 20).

Matson recognizes that this Court found that the prior complaint alleged sufficient factual matter to support a claim for equitable indemnity. *See* Order at p. 39. While Matson preserves its objection to that ruling, it is bringing the current Motion on the basis that the alleged facts in the Amended Complaint are not the same as those alleged in the Original Complaint—namely Seabright has removed its allegations related to the $1,700 in compensation benefits. *See* Amended Compl. That change is not merely semantic or cosmetic. Indeed it alters the analysis completely.

As the above standard makes clear, the first element of equitable indemnity is that the claimant must allege that he or she discharged an obligation to a third party. *See* Order at p. 34 (quoting 41 Am. Jur. 2d Indemnity § 20). Unlike with any compensation benefits, which would have been paid to Soares, the

18

attorneys' fees, which are now the sole basis for the suit, were never paid to Soares or any third party (unless Seabright's attorneys are deemed somehow to be a third party). With respect to the compensation benefits, Seabright could at least have argued that it paid them to a third party (Soares) and that Matson was also liable to him under the LHWCA. But that logic does not even remotely extend to attorneys' fees. And even if Seabright's attorneys were deemed to be a third party, Matson certainly was never liable to them for anything. Going a step further, the third element, that of balancing the competing obligations, does not even make sense in this context.

The Ninth Circuit discussed equitable indemnity as being available to "prohibit one from profiting by his own wrong." *Hydro-Air Equip., Inc. v. Hyatt Corp.*, 852 F.2d 403, 406 (9th Cir. 1988). Similarly, the Hawai'i Supreme Court in applying tort indemnity focused on the concept of unjust enrichment. *Brooks v. Dana Nance & Co.*, 113 Hawai'i 406, 416, 153 P.3d 1091, 1101 (2007). Neither of those concepts is applicable on these facts—essentially an effort at fee-shifting after a dispute. To find otherwise would be to say that in *any* case a party could circumvent the American Rule by claiming a right to attorneys' fees on a theory of equitable indemnity. This simply cannot be the law.

Quite plainly, the claim for equitable indemnity as alleged in the Amended Complaint cannot satisfy the necessary elements to state a plausible

claim for relief.  Therefore it must be dismissed as a matter of law.

> ### C.   The Wrongful Act Exception to the American Rule Does Not Apply on These Facts

According to the well-established "American Rule," as a general

matter each party must pay for its own legal fees and expenses.  *See Perdue v.*

*Kenny A.*, 130 S. Ct. 1662, 1671 (2010).  The Hawai'i Supreme Court has

acknowledged some exceptions to this general rule allowing a shifting of fees

"when so authorized by statute, rule of court, agreement, stipulation, or precedent."

*In re Water use Permit Applications*, 96 Hawai'i 27, 29, 25 P.3d 802, 804 (2001).

In its prior Order, this Court acknowledged that the LHWCA did not

authorize fee-shifting and there are no applicable contractual agreements,

stipulation, or court rules in this matter.  *See* Order at p. 37.  Thus Seabright is left

to rely on an equitable exception.  One such exception pointed to by the Court is

the so-called "wrongful act" exception.

The wrongful act exception arises in cases where the acts of the

defendant cause the plaintiff to litigate with a third party.  *See Lee v. Aiu*, 85

Hawai'i 19, 32-33, 936 P.2d 655, 668-69 (1997).  In order for this exception to

apply, a party must establish four elements:

> (1) that the plaintiff had become involved in a legal dispute either
> because of a breach of contract by the defendant, or because of
> defendant's tortious conduct . . . ; (2) that the litigation was with a
> third party, not with defendant from whom the fees are sought to be

recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort, that they are the natural and necessary consequences of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery.

*Lee*, 85 Hawai'i at 33, 936 P.2d at 669.

Setting aside the fact that, as this Court acknowledged, the Hawai'i Supreme Court has only applied the wrongful act exception to cases involving tortious interference with contractual relations, misrepresentations, and fraud—all allegations of a completely different order of magnitude than those brought here—there is an additional problem facing Seabright in that it cannot, as a matter of law, meet the required elements. *See* Order at p. 39.

It is undisputed that Kyle Soares injured his back on November 10, 2004 while working for Brewer. *See* Amended Compl. at ¶ 5. It is also undisputed that at that time Soares was a covered employee under the LHWCA and that the insurance policy between Brewer and Seabright was in effect. *See* Amended Compl. at ¶¶ 5-6. It is further undisputed that on June 10, 2005, Mr. Soares filed a claim for compensation under the LHWCA against Brewer and Seabright for his November 10, 2004 injury and that no claim at all was filed against Matson until February 21, 2006. *See* Amended Compl. at ¶ 13

It is equally undisputed that Soares continued to press his initial claim

21

against Brewer and Seabright throughout the agency proceeding and said claim was never dismissed from the action. *See* Ex. B ("Opinion") at p.p. 9, 20.  Finally, it is also undisputed that Soares himself consistently testified that he did not sustain any specific injury after November 2004 and that his back condition remained unchanged from November 2004 until his last day of work on May 21, 2005.  *See id.*

As stated above, the first requirement of the wrongful act exception is that the plaintiff must establish that he became involved in a legal dispute *because of* some wrongful conduct of the defendant, be it a breach of contract or a tort of some kind.  *See Lee*, 85 Hawai'i at 33, 936 P.2d at 669.  In this case, the incident which precipitated Seabright's involvement in the matter was an injury sustained by Soares months before Matson was even on the scene.  Beyond that, even after Soares had worked for Matson, he still filed a claim solely against Brewer and Seabright and he never stopped pursuing that claim nor was it ever dismissed.  In other words, Matson had nothing to do with Seabright becoming involved in the dispute and Soares' consistent position meant that Seabright's involvement in defending that claim was required throughout.

Therefore the undisputed facts establish that the wrongful act exception does not apply to this case.  As a result, the American Rule should be applied and Seabright's claims for attorneys' fees must be dismissed.

## V.     CONCLUSION

For the foregoing reasons, Defendants Matson Terminals, Inc. and

Matson Navigation Company, Inc. respectfully request that this Court dismiss

Plaintiff's claims or, in the alternative, grant summary judgment in favor of

Matson.

DATED:  Honolulu, Hawaii, June 17, 2011.


/s/ Brett R. Tobin
JOHN R. LACY
BRETT R. TOBIN

Attorneys for Defendants
MATSON TERMINALS, INC. and
MATSON NAVIGATION COMPANY,
INC.