IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SEABRIGHT INSURANCE COMPANY,, )    CIVIL NO. 10-00221 LEK-KSC
                                )
            Plaintiff,          )
                                )
      vs.                       )
                                )
MATSON TERMINALS, INC.,         )
MATSON NAVIGATION COMPANY,      )
INC.,                           )
                                )
            Defendants.         )
_____ )


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**

          Before the Court is Defendants Matson Terminals, Inc.
and Matson Navigation Company, Inc.'s (collectively "Matson" or
"Defendants") Motion for Judgment on the Pleadings or for Summary
Judgment ("Motion"), filed on June 17, 2011.  Plaintiff Seabright
Insurance Company ("Seabright" or "Plaintiff") filed its
memorandum in opposition on September 29, 2011, and Matson filed
its reply on September 19, 2011.  This matter came on for hearing
on September 29, 2011.  Appearing on behalf of Matson were Brett
Tobin, Esq., and John Lacy, Esq., and appearing telephonically on
behalf of Seabright was Richard Wootton, Esq.  After careful
consideration of the Motion, supporting and opposing memoranda,
and the arguments of counsel, Matson's Motion is HEREBY GRANTED
IN PART AND DENIED IN PART for the reasons set forth below.  The
Motion is DENIED as to Plaintiff's First Cause of Action

(Equitable Subrogation) and GRANTED as to Plaintiff's Second

Cause of Action (Equitable Indemnity).

## BACKGROUND

Plaintiff seeks reimbursement of attorneys' fees and

costs that it paid on behalf of its insured, Brewer Environmental

Industries ("Brewer"), in a workers' compensation matter.

Plaintiff filed its original Complaint for breach of contract on

April 16, 2010 against Matson and Brewer.  On April 28, 2011,

this Court granted in part and denied in part Defendants' motion

for judgment on the pleadings, dismissing with prejudice the

breach of contract claim as to Seabright and Brewer, and the

equitable indemnity claim as to Brewer.  [Dkt. no. 46 ("April 28,

2011 Order").]  The Court granted Seabright leave to amend its

Complaint as follows:

> Plaintiffs raise the issue of "equitable
> subrogation" for the first time in their
> Memorandum in Opposition.  [Mem. in Opp. at 16.]
> While Plaintiffs argue that they "specifically
> pled Seabright's right of subrogation in the
> complaint[,]" subrogation is only referenced in
> passing in its "Facts" and "First Cause of Action
> (Breach of Contract)" sections.  [Complaint at ¶¶
> 13, 25 ("SEABRIGHT is additionally subrogated to
> the claims of BREWER, under the aforementioned
> insurance policy issued by SEABRIGHT to BREWER,
> and as a matter of law, for compensation benefits
> paid on behalf of BREWER, as well as attorneys'
> fees and costs expended by SEABRIGHT on behalf of
> BREWER.").]  Unlike Plaintiffs' equitable
> indemnity claim ("Second Cause of Action
> (Equitable Indemnity)"), equitable subrogation is
> not clearly pled as an independent cause of
> action.

2

Although Federal Rule of Civil Procedure
8(a)(2) requires only that a complaint include "a
short and plain statement of the claim showing
that the pleader is entitled to relief[,]" such a
statement must sufficiently put the defendants on
fair notice of the claims asserted and the grounds
on which they rest.  See Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (citation
omitted).  The Court FINDS that Plaintiffs have
failed to plead equitable subrogation in a manner
that provides such notice.  The Court therefore
DECLINES to review this claim.

The Court, however, GRANTS Seabright leave to
amend its Complaint for the limited purpose of
pleading its equitable subrogation claim.  The
equitable subrogation claim must be based on facts
currently alleged in the Complaint, and Plaintiffs
must file their Amended Complaint no later than
May 30, 2011.

[Id. at 40-41.]

Seabright filed its First Amended Complaint on May 20,

2011, alleging two separate causes of action: (1) equitable

subrogation; and (2) equitable indemnity.  The facts alleged are

similar to those listed in the original Complaint.  Briefly, on

November 10, 2004, longshormen Kyle Soares suffered an

aggravation and worsening of a pre-existing degenerative disc

disease of his lower back while working for and employed by

Plaintiff's insured, Brewer.  [First Amended Complaint at ¶ 5.]

The injury occurred in the course and scope of Mr. Soares'

employment as a covered employee under § 902(3) of the Longshore

and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq*.

("LHWCA" or the "Act").  [Id.]

Brewer was covered under a Seabright insurance policy

for claims brought by its employees under the LHWCA, and Seabright timely initiated payment of compensation benefits to Mr. Soares for medical expenses associated with his injury. [<u>Id.</u> at ¶ 6.] Plaintiff alleges that the policy contractually required it to provide legal representation to Brewer in any legal action arising from a claim for compensation made by an employee of Brewer. [<u>Id.</u>]

On January 31, 2005, Brewer and Defendants entered into an Asset Purchase Agreement ("Agreement") whereby Brewer agreed to sell and Defendants agreed to purchase HT&T Stevedoring, a business providing stevedoring services on the island of Hawai'i. [<u>Id.</u> at ¶ 9.] Paragraph 5.3 of the Agreement provides that Defendants shall:

> indemnify, defend and hold harmless [BREWER] from and against any and all loss, damage, claim, cost and expense and any other liability whatsoever (including, without limitation, reasonable attorneys' fees, charges and costs) incurred by [BREWER] by reason of any claim, demand or litigation relating to the Property Employees which arise from any act, omission, occurrence or matters that take place after the Cut-off Time.

[<u>Id.</u> at ¶ 10 (alteration in original).] The "Cut-off Time" of the Agreement was defined as January 31, 2005 at 11:59 p.m., and Mr. Soares was designated a "Property Employee" in Schedule 1.27 of the Agreement. [<u>Id.</u> at ¶ 11.] After January 31, 2005, Soares became an employee of Defendants.

On June 10, 2005, Mr. Soares filed his first claim for compensation under the LHWCA against Brewer and Seabright for his November 10, 2004 injury. [Id. at ¶ 13.] During his employment with Defendants, he suffered a further aggravation and worsening of his lower back degenerative disc disease. [Id. at ¶ 12.] On February 21, 2006, Mr. Soares filed a second claim for compensation for "cumulative trauma." [Id. at ¶ 13.]

Brewer tendered the defense and indemnity for Mr. Soares' "cumulative trauma" claims to Defendants on June 5, 2006, but Defendants refused to acknowledge liability, and Seabright paid compensation, medical benefits, and the costs and fees of defending Brewer. [Id. at ¶ 14.]

Following a full hearing before the federal Office of Workers' Compensation Programs, Administrative Law Judge ("ALJ") Gerald Etchingham held that Mr. Soares' back injury worsened as a result of his work for Defendants, and that Defendants were the "last responsible employer" pursuant to the LHWCA. [Id. at ¶ 16.] Brewer and Defendants both disputed full liability for Mr. Soares' claims before the ALJ. The ALJ ordered Defendants to reimburse Seabright and Brewer for compensation and medical expenses paid to Soares for the time period after he began working for Defendants on January 31, 2005. [Id.]

Seabright alleges that it has paid in excess of $139,527.04 in legal fees and costs in defense of Brewer in

connection with Mr. Soares' claims pursuant to the insurance policy. Defendants continue to refuse to reimburse Seabright for the legal fees and costs incurred in defending Brewer. [<u>Id.</u> at ¶¶ 17-18.]

In their First Cause of Action ("Equitable Subrogation"), Seabright alleges that, under its insurance policy with Brewer, it is contractually required to pay all attorneys' fees and costs incurred by Brewer in connection with Mr. Soares' claim. Seabright alleges it is subrogated to the rights and claims of Brewer against Defendants for all attorneys' fees and costs expended on behalf of Brewer, for which Brewer would have been entitled to recover from Defendants. [<u>Id.</u> at ¶¶ 20-21.]

In their Second Cause of Action ("Equitable Indemnity"), Seabright alleges that, as a result of Defendants' failure and refusal to pay Mr. Soares' compensation and to accept the tender of Brewer's defense, Seabright has expended legal fees and costs on behalf of Brewer, and continues to expend significant legal fees and costs asserting this claim against Defendants, for which Seabright is equitably entitled to indemnification from Defendants. [<u>Id.</u> at ¶¶ 23-26.]

## I.   <u>Matson's Motion</u>

Matson moves for judgment on the pleadings or for summary judgment on the grounds that: (1) Plaintiff's equitable state law claims are preempted by the LHWCA and must be

dismissed; (2) Plaintiff's claims are not properly pled; and (3) the American Rule bars Plaintiff's claims for attorneys' fees and the "wrongful act" exception does not apply.

### A.   LHWCA Preemption

Matson argues that Seabright's claims are barred because they are preempted by the LHWCA as matters of express preemption as well as conflict preemption. [Mem. in Supp. of Motion at 6-7.]

#### 1.   Express Preemption

According to Matson, the LHWCA's exclusivity provision, which limits employer liability, amounts to an express preemption of Plaintiff's claims. Section 905 of the LHWCA expressly states that "[t]he liability of an employer prescribed in section 4 shall be exclusive and in place of all other liability of such employer to the employee, his legal representative . . . and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death." 33 U.S.C. § 905(a). Matson argues that Congress has placed an express limitation on the kinds of claims that can be brought relating to longshore injuries. [Mem. in Supp. of Motion at 8.]

Matson acknowledges that courts allow certain types of state-law claims to be raised, but argues that the weight of authority limits such instances to cases wherein the plaintiff

alleges an independent contractual duty that has been breached.
[Id. at 8-9. (citing cases).] Matson notes that this Court
previously cited to the case of Johnson v. National
Steel & Shipbuilding Co., 742 F. Supp. 1062 (S.D. Cal. 1990), for
the proposition that third-party claims against employers are not
always barred by the LHWCA. Even Johnson, however, acknowledged
that generally only "third party actions based on contractual
indemnity are not barred by the statute." [Id. at 9 (citing 742
F. Supp. at 1066).] According to Matson, under the prevailing
view, Seabright's claims are barred by § 905(a), unless it can
demonstrate a contractual duty that brings the claims outside
the LHWCA context.

Based on this Court's earlier ruling that "§ 905(a) can
be overcome where the action is 'on account of' an independent
duty owed by the employer to the third party[,]" Matson asserts
that this Court found that the exclusivity provision of § 905(a)
did not bar Seabright from bringing its claim. Matson requests
that the Court revisit that position in light of the following
new circumstances brought by the new posture of the case and the
amended claims. [Id. at 9.]

First, Seabright has now limited its claims to
attorneys' fees and costs by removing any allegation of
outstanding compensation benefits. Additionally, this Court
ruled that Seabright cannot base its equitable indemnity claims

upon the Agreement between Matson and Brewer.  Instead, Matson contends that Seabright can only make claims stemming from the rights assigned to it under Brewer's insurance policy.  This Court also ruled that any such assigned rights are limited to the rights Brewer possessed at the time of the issuance of the insurance policy.  Matson argues that the legal fees incurred by Seabright arose out of the agency proceeding under the LHWCA.  If those fees are deemed to be "on account of" that claim, they are barred by the LHWCA.  If they are not "on account of" the injury, Seabright must allege an independent duty to support the claim. Matson argues that Seabright failed to do so in the First Amended Complaint.  [Id. at 10.]

Next, Matson asserts that this Court's analysis in the prior order was limited to the claim of equitable indemnity. Matson claims it could locate no authority allowing for an equitable subrogation claim for attorneys' fees in LHWCA cases. While some cases such as Johnson speak of implied rather than contractual indemnity, none appear to allow for equitable subrogation.  In sum, Matson argues that, to the extent these claims arise under the LHWCA, they are expressly preempted.  To the extent they are outside of the LHWCA, Seabright must allege an independent duty to support the remedy it seeks, which it has not done.  [Id. at 11.]

### 2. **Conflict Preemption**

Even if the LHWCA does not expressly preempt Plaintiff's claims, Matson argues that the claims are preempted because they conflict with the purposes of the LHWCA. The LHWCA

> was designed to strike a balance between the concerns of the longshoremen and harbor workers on the one hand, and their employers on the other. Employers relinquished their defenses to tort actions in exchange for limited and predictable liability. Employees accept limited recovery because they receive prompt relief without the expense, uncertainty, and delay that tort actions entail.

[Id. at 13 (citing Morrison-Knudsen Constr. Co. v. Dir., Office of Worker's Comp. Programs, 461 U.S. 624, 635-36 (1983)).]

Matson argues that § 905(a)'s exclusivity clause limits employer liability to a single agency proceeding, which makes sense in light of the provision in § 904(b) that "[c]ompensation shall be payable irrespective of fault as a cause of injury." [Id. (quoting 33 U.S.C. § 904(b)).] Matson contends that the LHWCA is a compromise in which employers essentially concede liability, even in the absence of fault, but only if it comes in exchange for a predictable limitation on the amount of that liability. Allowing claims to be brought in other forums, like this one, takes away that predictable limitation and upsets the balance as well as the efficiency of a uniform compensation scheme. [Id.]

Matson asserts that the LHWCA extends this balance even

further by expressly addressing attorneys' fees in § 928 and only allowing them to be paid "to the attorney for the claimant." According to Matson, the intent to limit attorneys' fees to the claimant alone is also clear from the legislative history of the 1972 amendments to the LHWCA: both the Senate and House Reports make clear that attorneys' fees may only be awarded to a successful claimant and that "[a]ttorneys fees may not be assessed against employers (or carriers) in other cases." [Id. at 14 (quoting S. Rep. No. 92-1125, at 70 (1972) and H.R. Rep. No. 92-1441, at 215 (1972))]. Matson argues that the object of such a limitation is to maintain the balance by limiting potential liability and creating a predictable regime while also allowing a claimant, and only a claimant, to make sure his compensation is not decreased by having to pay for litigation to secure it. [Id.]

According to Matson, the current suit represents a transparent attempt to circumvent the limitations of the LHWCA, where compensation was fully paid. The LHWCA prevented Seabright from getting a fee award in the agency action, so it brought its claims here instead. If allowed to go forward, there would be nothing preventing parties from seeking in actions under state law that which the LHWCA statutory scheme expressly forbids. This would defeat the protections for employers which are built into the statutory bargain, thus leaving them with no

defense to liability and no predictable limitation in exchange. It would also defeat the efficiency gains of having a uniform compensation system, instead opening issues up to ancillary litigation in multiple forums. [Id. at 15.]

**B.    Plaintiff's Claims Are Insufficiently Pled**

Matson next argues that Plaintiff fails to state claims that are plausible on their face, rather than mere conclusory statements.

First, with respect to the equitable subrogation claim, Matson contends that any assignment of rights from Brewer to Seabright must be based solely on the insurance policy and not on the Agreement.  Further, any assignment of rights is limited to the rights Brewer possessed at the time the policy was issued, and here, Brewer did not possess any rights against Matson at the time the insurance policy was issued because the parties had not yet negotiated the Agreement.  [Id. at 16-17.]

To the extent Brewer arguably had any right to recover attorneys' fees from Matson, that right would have been based on the Agreement, to which Seabright was not a party.  Outside of the Agreement, Matson argues that Brewer had no rights at all because the LHWCA forbids the awarding of attorneys' fees as between employers.  [Id. at 17 (citing 33 U.S.C. § 928(a)).] Matson asserts that, under the doctrine of equitable subrogation, Seabright might be allowed to step into Brewer's shoes, "but

12

only as those shoes existed at the time of the issuance of the insurance policy — which indisputably occurred prior to Soares' injury and prior to negotiation of the [Agreement]." [Id.] At that time, Brewer had no right of recovery against Matson for attorneys' fees, and, as a result, Seabright necessarily also lacks any right of recovery. Matson argues that Seabright cannot allege any set of facts under which it has a right of equitable subrogation entitling it to an award of attorneys' fees. [Id.]

As to equitable indemnity, Matson notes that this Court instructed Plaintiff to plead and prove that: (1) he or she discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and defendant, the obligation ought to be discharged by the latter. Matson recognizes that this Court found that the prior Complaint alleged sufficient factual matter to support a claim for equitable indemnity, but it brings the current Motion on the basis that the alleged facts in the First Amended Complaint are not the same as those alleged in the original Complaint. Namely, Seabright has removed its allegations related to the $1,700 in compensation benefits, which it previously alleged it was owed by Matson. Matson argues this change alters the analysis entirely. [Id. at 17-19.]

The first element of equitable indemnity is that the claimant must allege that he or she discharged an obligation

13

to a third party, but, unlike with any compensation benefits,
which would have been paid to Mr. Soares, the attorneys' fees,
which are the sole basis for this suit, were never paid to
Mr. Soares or any third party (unless Seabright's attorneys are
deemed to be a third party).  Even if Seabright's attorneys were
deemed to be a third party, Matson argues it was never liable to
them for anything.  Further, the third element, that of balancing
the competing obligations, does not make sense in this context
and is likely not applicable on these facts — essentially an
effort at fee-shifting after a dispute.  Matson posits that, to
find otherwise would be to say that, in any case, a party could
circumvent the American Rule by claiming a right to attorneys'
fees on a theory of equitable indemnity.  Matson urges the court
to dismiss both causes of action for failure to state a claim.
[Id. at 19-20.]

### C.   No Exception to the American Rule

Finally, Matson argues that there is no exception to
the American Rule that each party must pay its own legal fees
applicable here.  Matson points to the Court's previous order in
which it acknowledged that the LHWCA does not authorize
fee-shifting, and argues that Seabright is left to rely on an
equitable exception.  [Id. at 20.]

The "wrongful act" exception arises in cases where the
acts of the defendant cause the plaintiff to litigate with a

14

third party.  In order for this exception to apply, a party must establish four elements: (1) that the plaintiff had become involved in a legal dispute either because of a breach of contract by the defendant, or because of defendant's tortious conduct; (2) that the litigation was with a third party, not with defendant from whom the fees are sought to be recovered; (3) that the attorneys' fees were incurred in that third-party litigation; and (4) whether the fees and expenses were incurred as a result of defendant's breach of contract or tort, that they are the natural and necessary consequences of the defendant's act, since remote, uncertain, and contingent consequences do not afford a basis for recovery.  [Id. at 21-22 (citing Lee v. Aiu, 85 Hawai'i 19, 32-33, 936 P.2d 655, 668-69 (1997)).]

Matson states that the Hawai'i Supreme Court has applied the "wrongful act" exception only in cases involving tortious interference with contractual relations, misrepresentation, and fraud, none of which are involved in this case.  Matson argues that Seabright cannot meet the elements for the exception here because Mr. Soares injured his back on November 10, 2004 while working for Brewer, at which time he was a covered employee under the LHWCA, and the insurance policy between Brewer and Seabright was in effect.  On June 10, 2005, Mr. Soares filed a claim for compensation under the LHWCA against Brewer and Seabright for his November 10, 2004 injury and no

15

claim was filed against Matson until February 21, 2006.
Mr. Soares continued to press his initial claim against Brewer
and Seabright throughout the agency proceeding. Finally,
Mr. Soares himself consistently testified that he did not sustain
any specific injury after November 2004, and that his back
condition remained unchanged from November 2004 until his last
day of work on May 21, 2005. [Id. at 22.]

As to the first requirement, in this case, the incident
which precipitated Seabright's involvement in the matter was an
injury sustained by Mr. Soares months before Matson was involved.
Beyond that, even after Mr. Soares had worked for Matson, he
still filed a claim solely against Brewer and Seabright, and he
never stopped pursuing that claim, nor was it ever dismissed.
Matson argues that it had nothing to do with Seabright becoming
involved in the dispute and Mr. Soares' consistent position meant
that Seabright's involvement in defending that claim was required
throughout. According to Matson, the undisputed facts establish
that the "wrongful act" exception does not apply to this case,
and the American Rule bars Plaintiff's attempt to recover
attorneys' fees. [Id. at 22-23.]

II. **Plaintiff's Opposition**

Plaintiff argues in opposition that the only issue
properly before the Court is Matson's challenge to Plaintiff's
equitable subrogation claim. Plaintiff characterizes Matson's

Motion as arguing that, because Plaintiff paid the attorney's
fees and costs to defend Mr. Soares' claim instead of Brewer,
Matson may walk away from its wrongful refusal to defend Brewer.
[Mem. in Opp. at 1-2.]

A.  **Law of the Case**

Plaintiff first argues that this Court has already made
specific findings on most of the issues raised by the instant
Motion, but Matson has not stated any grounds for ignoring the
law of the case and asking the Court to reconsider its previous
holding.  Plaintiff acknowledges that a district court has
discretion to entertain a subsequent summary judgment motion when
new facts have been discovered that change the basis upon which
the court previously denied summary judgment.  [Id. at 8-9.]

B.  **Equitable Subrogation**

Plaintiff argues that it states a claim for equitable
subrogation under state law because it is an insurer, it paid a
loss or claim for its own insured, and, therefore, it becomes
equitably subrogated to the rights of the insured against the
third-party who is responsible for the loss.  [Id. at 9 (citing
State Farm Fire & Cas., Co. v. Pac. Rent-All, Inc., 90 Hawai'i
315, 328, 978 P.2d 753, 766 (1999)).]  Plaintiff argues that
Matson's failure to defend Brewer against Mr. Soares' claim
forced Brewer, its insured, to incur a loss in the form of
attorneys' fees and costs for defending the claim.  Plaintiff

17

claims that it steps into the shoes of Brewer, who has a contractual right to recover fees from Matson under the Agreement. [Id.]

According to Plaintiff, when it and Brewer tendered Brewer's defense to Matson in June 2006, Matson wrongfully denied the tender, Brewer was forced to incur attorneys' fees and costs, and Brewer would have paid those fees and costs out of its own pocket, had it not purchased insurance from Plaintiff. Brewer would have had the right to pursue a breach of contract claim against Matson to recover those attorneys' fees and costs. Plaintiff, having paid the attorneys' fees and costs incurred by Brewer, is subrogated to Brewer's contractual rights against Matson. [Id. at 11.]

Plaintiff attempts to rebut Matson's argument that, because Brewer purchased the insurance policy before Brewer signed the Agreement or incurred attorneys' fees, it has no right of subrogation. It contends that an insurer's right of equitable subrogation always arises from a loss that occurred after the insurer issues a policy to its insured; insurers do not issue polices covering losses that have already occurred. Plaintiff argues that there is no rule that the insurer's subrogation rights depend upon the insured having entered into the contract with a third-party or sustaining a loss prior to the insurer issuing the policy. [Id. at 12-13.]

Plaintiff asserts that its right to recover Brewer's attorneys' fees is greater than Matson's right to escape liability because: (1) the ALJ confirmed Brewer and Plaintiff's position when they tendered the defense to Matson; (2) Matson entered the Agreement to pay fees and costs, and now seeks to walk away from that obligation without consequences; (3) Plaintiff bore the fees at issue only because Brewer purchased insurance for its own benefit; and (4) if Plaintiff is left holding the bag, Matson will get the benefit of Brewer's insurance. [Id. at 13.]

C.  **Equitable Indemnity**

Plaintiff next argues that it has stated a valid claim for equitable indemnity, in accord with the Court's April 28, 2011 Order.  To the extent the Court determined that it is a disputed issue of material fact for trial whether Plaintiff can show that the equities favor shifting to Matson the fees and costs it paid on behalf of Brewer, Matson has not offered any additional facts to resolve the issue of fact.  [Id. at 14.]

Plaintiff also argues that the "wrongful act" exception to the American Rule applies because it seeks repayment of fees it paid on behalf of Brewer to defend Mr. Soares' claim from 2006 onward, when it and Brewer tendered the defense to Matson pursuant to the Agreement's indemnity provision.  Matson wrongfully breached the Agreement, requiring Plaintiff to incur

the costs of litigating the claim through hearing.  [_Id._ at 15-
16.]

### D.  __LHWCA Preemption__

With respect to preemption, Plaintiff argues that, in
_Smith v. United States_, 980 F.2d 1379 (1993), the Eleventh
Circuit held that an employer was liable to an indemnitee not
only for damages paid to an injured employee, but also for
attorneys' fees and expenses.  _Smith_ reasoned that such suit was
not barred by LHWCA § 905(a) because it was based on a contract
of indemnity, and not on account of the worker's injury.  [_Id._ at
16 (citing 980 F.2d at 1381).]  Here, Plaintiff's claims are on
account of the Agreement's express contractual indemnity
provision, which it is entitled to enforce as it steps into the
shoes of its insured.  It argues that this case is on account of
Matson's independent duty to indemnify, not on account of
Mr. Soares' injury.  [_Id._ at 16-17.]

Plaintiff also argues that its equitable claims do not
conflict with the purpose of the LHWCA, and that its claims are
not based on the LHWCA.  It posits that the predictability of the
LHWCA has already been satisfied; Mr. Soares brought his claim,
it went to hearing, and he received an award paid by Matson, the
last responsible employer.  Plaintiff argues that § 905(a) is not
a license for stevedoring companies to breach their contractual
obligations to third-parties.  [_Id._ at 18-19.]

In summary, Plaintiff argues that it would be inequitable to allow Matson to escape its contractual obligation to pay Brewer's attorneys' fees.

## III. **Defendants' Reply**

In its reply, Matson argues that Plaintiff seeks pure fee-shifting "based on a nonexistent tie to an unestablished contractual right of another deriving from a contract which a court has already definitively ruled Plaintiff has no stake in[.]" [Reply at 1.] Matson states that it is not ignoring this Court's previous order, or seeking reconsideration, rather, it is responding to an amended complaint with new facts and a new claim. [Id. at 4.]

### A. **LHWCA Preemption**

Matson maintains that the Agreement is no longer part of this case because the Court dismissed all breach of contract claims and determined that Plaintiff has no rights under the Agreement as either a third-party beneficiary or assignee. Further, with respect to Seabright's remaining equitable claims, the Court limited those to claims that stem solely from the rights assigned by Brewer to Seabright under the insurance policy as they existed at the time the parties entered into the policy, which indisputably pre-dated the Agreement. In sum, Matson argues that Seabright cannot rely on the Agreement as the source of any of its claims. [Id. at 3-4.]

It also argues that the LHWCA bars these state-law claims because they are not based on an independent contractual duty. "[O]nly when the plaintiff can point to an actual duty in contract that is separate from the incident causing injury can the case proceed." [Id. at 5.] Matson distinguishes the cases relied upon by Plaintiff as requiring a separate and independent duty, in contract or tort, to avoid preemption. [Id. at 5-7.]

Matson argues that, because this case is now entirely about attorneys' fees, its preemption claims are stronger. Section 928(a) of the LHWCA limits any fee-shifting to employees only, with no allowance for shifting of fees as between employers or their insurers. Matson argues that, to allow Seabright to seek in this action what it was forbidden from seeking in the administrative action would directly conflict with the careful policy balance created by the LHWCA. [Id. at 8-9.]

**B.   Equitable Claims**

Plaintiff's equitable indemnity claim fails because Plaintiff does not allege the required elements identified in the Court's April 28, 2011 Order. In its initial Complaint, Seabright's equitable indemnity claim focused on the $1,700 in compensation Seabright felt it was due for payments it made to Mr. Soares. In the First Amended Complaint, Plaintiff removed the claim for reimbursement and now seeks only attorneys' fees, which changes the analysis. The framework for analyzing a claim

for equitable indemnity requires a plaintiff to "plead and prove
that: (1) he or she discharged a legal obligation owed to a third
party; (2) the defendant was also liable to the third party; and
(3) as between the claimant and defendant, the obligation ought
to be discharged by the latter." [Id. at 10 (quoting April 28,
2011 Order at 34).] Without any compensatory payment to a third
party (*i.e.*, Mr. Soares), Seabright cannot satisfy the first
element. With respect to the third element, Seabright cannot
establish that the obligation ought to be discharged by Matson.
Matson argues that this is not the type of fact pattern that the
doctrine of equitable indemnity was designed to address. [Id. at
10-11.]

Matson next argues that Plaintiff's equitable
subrogation claim fails because the insured, Brewer, did not
suffer any loss. There was no finding of fault in the LHWCA
proceedings, and Matson fully paid its share of Mr. Soares'
compensation. [Id. at 11.] Further, the doctrine of equitable
subrogation only allows an insurer to step into the shoes of the
insured as they exist, meaning that it can exercise no greater
rights than the insured had. Even assuming that Brewer obtained
a right to attorneys' fees based on the Agreement, those rights
post-dated the insurance policy and Brewer opted not to include
Seabright in the Agreement. [Id. at 12-13.]

## STANDARDS

### I.  Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) provides,
"[a]fter the pleadings are closed – but early enough not to delay
trial-a party may move for judgment on the pleadings."  Fed. R.
Civ. P. 12(c).  In considering a Rule 12(c) motion, the Court
must accept as true all factual allegations in the complaint, and
construe them in the light most favorable to the non-moving
party.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  A
motion for judgment on the pleadings should be granted when there
are no disputed issues of material fact, and the moving party is
entitled to judgment as a matter of law.  Id.

Prior to Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the
Ninth Circuit recognized that Rule 12(c) motions are virtually
identical to Rule 12(b)(6) motions, and applied the same standard
of review to both motions.  Dworkin v. Hustler Magazine, Inc.,
867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and
Rule 12(b)(6) motions differ in time of filing but are otherwise
"functionally identical," and applying the same standard of
review).  Following Iqbal, courts have applied Iqbal to Rule
12(c) motions.  See e.g., Point Ruston, L.L.C. v. Pac. Nw. Req'l
Council of the United Bhd. of Carpenters & Joiners, 658 F. Supp.
2d 1266, 1273 (W.D. Wash. 2009).

Accordingly, pursuant to Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet - that the court must accept as true all of the allegations contained in the complaint - "is inapplicable to legal conclusions." Iqbal, 129 S. Ct. at 1949. Accordingly, "[threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949 (citing Twombly, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. Id. at 1950.

If, on a motion for judgment on the pleadings, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

## II.  **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

> Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex [Corp. v. Catrett], 477 U.S. [317,] 323 [(1986)].  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller [v. Glenn Miller Prods., Inc.], 454 F.3d [975,] 987 [(9th Cir. 2006)].
>
> When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific

26

> facts showing that there is a genuine issue for
> trial." <u>Porter v. Cal. Dep't of Corr.</u>, 419 F.3d
> 885, 891 (9th Cir. 2005) (quoting <u>Anderson v.</u>
> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).
> "A genuine dispute arises if the evidence is such
> that a reasonable jury could return a verdict for
> the nonmoving party." <u>California v. Campbell</u>, 319
> F.3d 1161, 1166 (9th Cir. 2003); <u>Addisu v. Fred</u>
> <u>Meyer, Inc.</u>, 198 F.3d 1130, 1134 (9th Cir. 2000)
> ("There must be enough doubt for a 'reasonable
> trier of fact' to find for plaintiffs in order to
> defeat the summary judgment motion.").
>
> On a summary judgment motion, "the nonmoving
> party's evidence is to be believed, and all
> justifiable inferences are to be drawn in that
> party's favor." <u>Miller</u>, 454 F.3d at 988
> (quotations and brackets omitted).

<u>Rodriquez v. Gen. Dynamics Armament & Technical Prods., Inc.</u>, 696
F. Supp. 2d 1163, 1176 (D. Hawai`i 2010) (some citations
omitted).

## **DISCUSSION**

## I.  **Longshore and Harbor Workers' Compensation Act Preemption**

The Court first addresses Matson's argument that
Plaintiff's claims are preempted by the LHWCA.  The Act creates a
workers' compensation scheme for certain maritime workers which
is exclusive of other remedies.  The Act states in relevant part:

> The liability of an employer prescribed in section
> 904 of this title shall be exclusive and in place
> of all other liability of such employer to the
> employee, his legal representative, husband or
> wife, parents, dependents, next of kin, and anyone
> otherwise entitled to recover damages from such
> employer at law or in admiralty on account of such
> injury or death, except that if an employer fails
> to secure payment of compensation as required by
> this chapter, an injured employee, or his legal
> representative in case death results from the
> injury, may elect to claim compensation under the

chapter, or to maintain an action at law or in
admiralty for damages on account of such injury or
death. In such action the defendant may not plead
as a defense that the injury was caused by the
negligence of a fellow servant, or that the
employee assumed the risk of his employment, or
that the injury was due to the contributory
negligence of the employee. For purposes of this
subsection, a contractor shall be deemed the
employer of a subcontractor's employees only if
the subcontractor fails to secure the payment of
compensation as required by section 904 of this
title.

33 U.S.C. § 905(a).

Courts interpreting the "on account of" language
in § 905(a) have found a congressional intent to
abrogate all tort liability on the part of the
employer to the employee, or to a third party,
arising out of the employee's injury. Where an
action is based on the breach of a separate and
independent duty owed by the employer to a third
party, however, § 905(a) may be overcome.

Burnett v. A. Bottacchi S.A. de Navegacion, 882 F. Supp. 1050,

1053 (S.D. Fla. 1994) (citations omitted); see also Carney v.

Marathon Oil Co., 632 F. Supp. 1037, 1042 (W.D. La. 1986)

("[Section] 905(a) does not bar third-party indemnity claims

against LHWCA employers when there is a contractual (express or

implied) relationship between the employer and the third-party

upon which the indemnity claim is based[.]").

A.   **Equitable Indemnity**

With respect to the equitable indemnity claim, Matson

argues that there is no contractual relationship between it and

Seabright, based on this Court's earlier ruling that "the

assigned recovery rights [from Brewer to Seabright] do not extend

28

to the indemnity rights conferred by Matson to Brewer in the Agreement." [April 28, 2011 Order at 28.] The Court also ruled that "Brewer assigned its recovery rights to Seabright as they existed at the time the parties entered into the Insurance Policy. The Court further FINDS that the assigned recovery rights do not extend to the indemnity rights conferred by Matson to Brewer in the agreement . . . ." [Id.]

In response, Plaintiff points again to the Agreement as the source of Matson's independent contractual duty to indemnify it, which removes the claim from the reach of the Act's exclusivity provision. It states that "the current action is not based on the LHWCA, but on paragraph 5.3 ('Indemnity') of the Agreement between Matson and Brewer." [Mem. in Opp. at 18.] Plaintiff does not, however, identify any other source of Matson's duty to it sufficient to establish that its claims arise on account of an express or implied contract or some other independent duty existing between the indemnitor and intemnitee. That is, Plaintiff fails to present the source of any other obligation that could take the claim out from under the preemptive shadow of the LHWCA. The Motion is GRANTED with respect to Plaintiff's equitable indemnity claim.

B.  **Equitable Subrogation**

As to Plaintiff's equitable subrogation claim, however, the Court FINDS that Plaintiff does have an independent basis

29

upon which to seek its attorneys' fees from Matson. Briefly, under this equitable doctrine, Plaintiff steps into the shoes of its insured, Brewer, and may seek to enforce the terms of the Agreement.

The Hawai'i Supreme Court explained equitable subrogation in <u>State Farm Fire & Casualty Co. v. Pacific Rent-All, Inc.</u>, as follows:

> Regarding legal or equitable subrogation, *The Law of Liability Insurance*, *supra*, § 23.02[2], at 23.8-13 states that
>
> > [a]n insurer's right to legal or equitable subrogation arises only when certain requirements are met. First, the insurer must have paid the loss. The right extends to the extent of the amount actually paid and the amount paid must have been paid to the insured.
> >
> > In addition, the amount paid by the insurer must result in the insured's being made "whole." The general rule is that the subrogated insurer is entitled to no subrogation, or to reduced subrogation, if the result of full subrogation would be to cause the insured to be less than fully compensated for the loss, although some cases hold to the contrary. . . .
> >
> > . . . .
> >
> > The second requirement for the existence of the right to legal subrogation is that the insurer must not have merely volunteered to pay the loss, but must have been required to pay based upon[, for example, operation of law or a] . . . contract of insurance. . . .
> >
> > Finally, since legal subrogation is equitable in nature, the right will not be enforced unless the rights of the party

> seeking it are greater than the rights of
> others.

(Footnotes omitted.) (Brackets added.)

90 Hawai‘i 315, 329 n.8, 978 P.2d 753, 767 n.8 (1999) (quoting 4

R. Long, The Law of Liability Insurance § 23.02[2], at 23.8-13

(1998)).

> Because
>
>> subrogation involves "stepping into" the
>> shoes of another, when an insurer brings an
>> action against a tortfeasor based upon its
>> subrogation rights, the insurer's rights flow
>> from the insured's rights.  The subrogated
>> insurer, known as the "subrogee," can be
>> subrogated to and enforce only such rights as
>> the insured, known as the "subrogor," has
>> against the party whose wrong caused the
>> loss.  In a subrogation suit, a tortfeasor
>> may assert against the insurer any defense
>> which the tortfeasor could have asserted
>> against the insured.
>
> *The Law of Liability Insurance, supra*, § 23.03[2],
> at 23-13 to 23-14.  Therefore, the general rule
> provides that an insured may affect its insurer's
> subrogation rights because they are derivative,
> *i.e.*, the insurer's subrogation rights rest upon
> the viability of the insured's claim against the
> tortfeasor.  Id. § 23.04[1], at 23-40.

Id. at 329, 978 P.2d at 767.

Here, the insured's claim against Matson is based on

the provision in the Agreement allowing for the payment of

Brewer's attorneys' fees.  Under the Agreement between Matson and

Brewer, Matson agreed to indemnify Brewer for its "reasonable

attorneys' fees, charges and costs" incurred by Brewer "by reason

of any claim, demand or litigation relating to the Property

Employees," which included Mr. Soares' workers' compensation claim. [First Amended Complaint ¶ 10.] Thus, as subrogee, Seabright may assert Brewer's right to recover attorneys' fees under the Agreement.

The undated insurance policy indicates that the policy period is from December 1, 2003 to December 1, 2004, whereas Matson and Brewer did not enter into the Agreement until January 31, 2005. To the extent Matson argues that Seabright can only seek to enforce Brewer's rights at the time of the insurance policy – and before the Agreement was effective – the Court disagrees. With respect to claims for equitable subrogation, the authority cited above does not indicate that an insurer's subrogation rights are limited to those of the insured at the time the parties contracted for the insurance policy. In fact, the parties have identified no authority limiting a subrogee's rights to those the subrogor had at the time the parties contracted. Rather, as stated <u>supra</u>, "the insurer's rights flow from the insured's rights. The subrogated insurer, known as the 'subrogee,' can be subrogated to and enforce only such rights as the insured, known as the 'subrogor,' has against the party whose wrong caused the loss." <u>State Farm</u>, 90 Hawaiʻi at 329, 978 P.2d at 767 (citation omitted). The Court agrees with Plaintiff that an insurer's right of equitable subrogation always arises from a loss that occurred after the insurer issues a policy of insurance

to its insured.  Further, Matson points to no rule stating that the existence of the insurer's subrogation rights against a third-party must predate the relationship between the subrogee and subrogor, which created the right of equitable subrogation.

As the State Farm decision explained, "the insurer's subrogation rights rest upon the viability of the insured's claim against the tortfeasor." Id. (citation omitted).  Matson does not argue that Brewer would not have a viable claim and cannot enforce the Agreement; here, Seabright's rights rest upon the viability of Brewer's claim against Matson.  That is, the right is "derivative," and when equitable subrogation applies, the subrogee has all the rights and claims of the subrogor with respect to the loss.  See, e.g., In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002) ("It is a derivative right, acquired by satisfaction of the loss or claim that a third party has against another. . . .  Thus, when the doctrine of subrogation applies, the subrogee succeeds to the legal rights and claims of the subrogor with respect to the loss or claim."); Valley Forge Ins. Co. v. Zurich Am. Ins. Co., No. C 09-02007 SBA, 2010 WL 3769378, at *6-7 (N.D. Cal. Sept. 22, 2010) ("In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid.  The right of subrogation is

derivative. An insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured. The subrogated insurer is said to 'stand in the shoes' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have." (citation and quotation signals omitted)).

The Court acknowledges that it has located no case involving an equitable subrogation claim for attorneys' fees resulting from a LHWCA dispute. Nonetheless, the Court will not grant summary judgment on preemption grounds in the absence of authority indicating that equitable subrogation claims, such as the one alleged here, are clearly barred by the Act. Common sense dictates here that, to find otherwise, would result in grave inequity. Essentially, Brewer would be forced to elect between tendering to its insurer for coverage and defense costs for which it has paid premiums under the insurance contract or pursuing Matson on equitably indemnity. It defies logic and equity to provide Matson the windfall of avoiding any responsibility for the costs of defense (*i.e.*, its share of attorneys' fees), when it has been found liable for part of the compensation award to Mr. Soares. The Court FINDS, for purposes

of the instant Motion, that Matson has not established that
Plaintiff lacks the requisite independent right to seek recovery
of attorneys' fees from Matson under an equitable subrogation
theory.  The Court, therefore, CONCLUDES that Plaintiff's
equitable subrogation claim is not expressly or impliedly barred
by the LHWCA's exclusivity provision, 33 U.S.C. § 905(a), and
DENIES the Motion on preemption grounds as to Plaintiff's
equitable subrogation claim.

## II.  <u>Defendants' Remaining Arguments</u>

Defendants also argue that Plaintiff's equitable claims
fail as a matter of law, and that the American Rule bars
Plaintiff's attempt to recover attorneys' fees in this case.  The
Court addresses each in turn.

### A.  <u>Equitable Subrogation</u>

Matson argues that Plaintiff's equitable subrogation
claim fails as a matter of law because Brewer never actually paid
its attorneys' fees or suffered any loss, and because Seabright
cannot show a greater right to obtain recovery.  As to the first
argument, that the insurer paid the loss sustained by the
insured, in the context of attorneys' fees, courts have allowed
insurers to maintain a claim for equitable subrogation where the
insurer itself, and not the insured, paid the attorneys' fees
incurred in defense of its insured.  <u>See</u>, <u>e.g.</u>, <u>In re Spirtos</u>,
103 B.R. 240 (Bkrtcy. C.D. Cal. 1989) (finding, under California

law, that the first element of equitable subrogation was satisfied where the insurer "suffered a loss by virtue of paying the attorney fees" after it accepted the tender of defense and "paid the fees and charges incurred for this representation").

In Lexington Insurance Co. v. Sentry Select Insurance Co., the court rejected the defendant's similar argument that the plaintiff was unable to establish the "loss" element of its equitable subrogation claim. No. CV F 08-1539 LJO GSA, 2009 WL 1586938, at *13 (E.D. Cal. June 5, 2009). The plaintiff argued in response that "payment on *behalf* of an insured is sufficient to support a subrogation claim without showing that the insured has suffered a loss." Id. at *13 (emphasis in original). The court agreed, quoting the following from Northwestern Mutual Insurance Co. v. Farmers' Insurance Group, 76 Cal. App. 3d 1031, 1044-1045, 143 Cal. Rptr. 415 (1978), and additional authorities:

> It is not a prerequisite to equitable subrogation that the subrogor suffered actual loss; it is required only that he would have suffered loss had the subrogee not discharged the liability or paid the loss. Thus it is that Continental Cas. Co. v. Zurich Ins. Co., supra., 57 Cal.2d at pages 35-38, 17 Cal. Rptr. 12, 366 P.2d 455, Aetna Cas. & Surety Co. v. Certain Underwriters, supra., 56 Cal. App. 3d at page 801, 129 Cal. Rptr. 47, Valentine v. Aetna Ins. Co., supra., 564 F.2d at page 296-297, and Peter v. Travelers Insurance Company, supra., 375 F. Supp. at pages 1349-1350, all permitted recovery by one insurance carrier against another on a theory of equitable subrogation without any showing that the insured had suffered any loss.

> See Troost v. Estate of Deboer, 155 Cal. App. 3d
> 289, 294, 202 Cal. Rptr. 47 (1984) ("Payment by
> the insurance company does not change the fact a
> loss has occurred."); Smith v. Parks Manor, 197
> Cal. App. 3d 872, 878-879, 243 Cal. Rptr. 256
> (1987) ("The creation of the obligation by
> execution of the settlement agreement was in
> itself a sufficient loss to give rise to a mature
> right of subrogation.")

Id. at *14.  The Court agrees with the analysis in Lexington

Insurance Co. permitting recovery by an insurance carrier on a

theory of equitable subrogation, where it paid attorneys' fees on

behalf of its insured.

With respect to Matson's second argument, that

Seabright cannot show a greater right of recovery, the Court

finds that this is an issue of fact and that Matson has not met

its burden on summary judgment.  Matson maintains that there was

no finding of fault in the LHWCA proceeding, and that it fully

paid for its part of Mr. Soares' compensation.  Plaintiff argues

that its right to recover is greater than Matson's right to avoid

liability because: (1) the ALJ confirmed Brewer and Seabright's

position when they tendered Brewer's defense to Matson in June

2006; (2) Matson agreed to pay Brewer's attorneys' fees and now

seeks to avoid that obligation; (3) Seabright bore those fees and

costs only because Brewer purchased insurance for its own

benefit; and (4) if Seabright is left "holding the bag," Matson

will effectively get the benefit of Brewer's insurance.  [Mem. in

Opp. at 13.]  On balance, construing the facts in the light most

37

favorable to the non-moving party, the Court FINDS that a trier
of fact could reasonably conclude that Seabright's right to
recover is greater than the rights of the third-party, Matson.

Finally, the Court observes that this equitable
doctrine has been applied liberally and flexibly.

> The doctrine of [equitable] subrogation is not a
> fixed and inflexible rule of law or of equity.  It
> is not static, but is sufficiently elastic to take
> within its remedy cases of first instance which
> fairly fall within it.  Equity first applied the
> doctrine strictly and sparingly.  It was later
> liberalized, and its development has been the
> natural consequence of a call for the application
> of justice and equity to particular situations.
> Since the doctrine was first ingrafted on equity
> jurisprudence, it has been steadily expanding and
> growing in importance and extent, and is . . . now
> broad and expansive and has a very liberal
> application.

Han v. United States, 944 F.2d 526, 529 (9th Cir. 1991) (quoting
In re Estate of Johnson, 240 Cal. App. 2d 742, 744-45, 50 Cal.
Rptr. 147, 149 (1966) (alterations in original)); see also State
Farm Fire & Cas. Co., 90 Hawai'i at 331, 978 P.2d at 769
("Subrogation is a venerable creature of equity jurisprudence, so
administered as to secure real and essential justice without
regard to form. . . .  It is broad enough to include every
instance in which one party pays a debt for which another is
primarily answerable, and which, equity and good conscience,
should have been discharged by the latter[.]" (citation and
quotation marks omitted) (some alterations in original)).  In
light of this liberal construction, the Court FINDS that

Seabright has sufficiently plead its cause of action, and that Matson is not entitled to judgment on the pleadings or summary judgment at this point. The Motion is DENIED as to Plaintiff's claim for equitable subrogation.

**B.   American Rule**

Finally, Matson argues that, even if Plaintiff's equitable claims survive, Plaintiff is prohibited from seeking attorneys' fees and legal costs by the American Rule, under which each party pays for its own legal fees and expenses." Further, while 33 U.S.C. § 928(a) allows employee-claimants to recover costs and fees associated with their claim, there is no such statutory authorization for employers.

According to the Hawai`i Supreme Court, "[n]ormally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent." In re Water Use Permit Applications, 96 Hawai`i 27, 29, 25 P.3d 802, 804 (2001) (citation and quotation marks omitted).

The American Rule does not bar Plaintiff's action seeking attorneys' fees here, because, as set forth above, Seabright is equitably subrogated to the rights of its insured under the Agreement, which specifically provides for the recovery

39

of attorneys' fees.  Thus, attorneys' fees are chargeable against the opposing party because they are authorized by agreement. Based on this finding, the Court does not reach the issue of whether the "wrongful act" exception to the American Rule applies in this case.  Defendants' Motion is DENIED with respect to this issue.

**CONCLUSION**

On the basis of the foregoing, Defendants Matson Terminals, Inc. and Matson Navigation Company, Inc.'s Motion for Judgment on the Pleadings or for Summary Judgment, filed on June 17, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is DENIED as to Plaintiff's First Cause of Action (Equitable Subrogation) and GRANTED as to Plaintiff's Second Cause of Action (Equitable Indemnity).  The case is currently set for trial on February 28, 2011, and the parties informed the Court at the hearing that there has been no discovery pending the Court's ruling on the Motion.  The parties are to contact Magistrate Judge Chang's chambers within fourteen days of the date of this order to schedule a trial re-setting conference.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 31, 2011.



_/S/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States District Judge

**SEABRIGHT INS. CO. V. MATSON TERMINALS, INC., ET AL; CIVIL NO. 10-00221 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS OR FOR SUMMARY JUDGMENT**