IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

SEABRIGHT INSURANCE COMPANY,    )    CIVIL NO. 10-00221 LEK-KSC
                                )
            Plaintiff,          )
                                )
      vs.                       )
                                )
MATSON TERMINALS, INC.,         )
MATSON NAVIGATION COMPANY,      )
INC.,                           )
                                )
            Defendants.         )
_____ )


**ORDER GRANTING SEABRIGHT INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
<u>PARTIAL SUMMARY JUDGMENT OF DEFENDANTS' LIABILITY</u>**

        Before the Court is Plaintiff SeaBright Insurance

Company's ("SeaBright") Motion for Summary Judgment or, in the

Alternative, Partial Summary Judgment of Defendants' Liability

("Motion"), filed on February 8, 2012.  [Dkt. no. 75.]

Defendants Matson Navigation Company, Inc. and Matson Terminals,

Inc. (collectively, "Matson") filed their memorandum in

opposition on April 9, 2012 [dkt. no. 87], and SeaBright filed

its reply on April 16, 2012 [dkt. no. 89].  This matter came on

for hearing on April 30, 2012.  Appearing on behalf of SeaBright

were Mark M. Murakami, Esq. and Marc A. Centor, Esq., and

appearing on behalf of Matson was Brett Tobin, Esq.  After

careful consideration of the Motion, supporting and opposing

memoranda, and the arguments of counsel, SeaBright's Motion is

HEREBY GRANTED for the reasons set forth below, and SeaBright's

request for reasonable attorneys' fees and costs is HEREBY
GRANTED pursuant to Hawai'i Revised Statutes § 607-14.

## BACKGROUND

On November 10, 2004, longshorman Kyle Soares suffered
an aggravation and worsening of a pre-existing degenerative disc
disease of his lower back while working for and employed by
SeaBright's insured, Brewer Environmental Industries, LLC
("Brewer").  [Motion, Decl. of Richard C. Wootton in Supp. of
Motion ("Wootton Decl."), Exh. B (Decision & Order Awarding
Benefits, dated June 13, 2008 ("ALJ Order")) at 4.]  The injury
occurred in the course and scope of Mr. Soares's employment as a
covered employee under § 902(3) of the Longshore and Harbor
Workers' Compensation Act, 33 U.S.C. § 901 et seq. ("LHWCA").
[ALJ Order at 1, 4; First Amended Complaint at ¶ 5.]

Brewer was covered under a SeaBright insurance policy
for claims brought by its employees under the LHWCA, and
SeaBright initiated payment of compensation benefits to
Mr. Soares for medical expenses associated with his injury.
[Motion, Decl. of Steven Wiper in Supp. of Pltf.'s Motion for
Summary Jdgmt. ("Wiper Decl."), Exh. A (Notice of Final Payment
or Suspension of Compensation Payment).]  SeaBright alleges that
the policy contractually required it to provide legal
representation to Brewer in any legal action arising from a claim
for compensation made by an employee of Brewer.  [First Amended

Complaint at ¶ 6; Wiper Decl. at ¶ 4, Exh. B (Workers

Compensation and Employers Liability Insurance Policy).]

Brewer and Matson entered into the Asset Purchase

Agreement ("Agreement") effective January 31, 2005, whereby

Brewer agreed to sell and Matson agreed to purchase HT&T

Stevedoring, a business providing stevedoring services on the

island of Hawaiʻi. [Pltf.'s Concise Statement of Material Facts

in Supp. of Motion for Summary Jdgmt. ("SeaBright's CSMF") at

¶ 1; Wootton Decl. at ¶ 2, Exh. A (Agreement).]  Paragraph 5.3 of

the Agreement, also referred to as the "Indemnity Clause,"

provides:

> [Brewer] shall indemnify, defend, and hold
> harmless [Matson] from and against any and all
> loss, damage, penalty, claim, cost and expense and
> any other liability whatsoever (including, without
> limitation, reasonabl[e] attorneys' fees, charges
> and costs) incurred by [Matson] by reason of any
> claim, demand, or litigation relating to the
> Property Employees which arise from any act,
> omission, occurrence or matters that take place
> before the Cut-off Time.  [Matson] shall
> indemnify, defend and hold harmless [Brewer] from
> and against any and all loss, damage, claim, cost
> and expense and any other liability whatsoever
> (including, without limitation, reasonable
> attorneys' fees, charges and costs) incurred by
> [Brewer] by reason of any claim, demand or
> litigation relating to the Property Employees
> which arise from any act, omission, occurrence or
> matters that take place after the Cut-off Time.

[Agreement at ¶ 5.3.]  The Agreement defines the "Cut-off Time"

as January 31, 2005 at 11:59 p.m., and Mr. Soares was designated

a "Property Employee" in Schedule 1.27 of the Agreement.

[SeaBright's CSMF at ¶¶ 3-4, 8; Agreement at ¶¶ 1.6, 1.11, 1.27.]
On or around January 31, 2005, Mr. Soares became a Matson
employee.  [SeaBright's CSMF at ¶ 10; Agreement at ¶ 5.2.]

During his employment with Matson, Mr. Soares suffered
a worsening of his lower back degenerative disc disease.
[SeaBright's CSMF at ¶ 11; ALJ Order at 7-9.]  On June 10, 2005,
he filed a claim for compensation under the LHWCA against Brewer
and SeaBright for his November 10, 2004 injury.  [SeaBright's
CSMF at ¶ 12; Wiper Decl. at ¶ 3.]  On February 21, 2006, he
filed a second claim for compensation against Matson for
"cumulative trauma."  [SeaBright's CSMF at ¶ 14; Wootton Decl.,
Exh. C (letter dated 2/22/06 from Preston Easley to R.
Bruininks).]

Brewer tendered the defense and indemnity for
Mr. Soares's "cumulative trauma" claims to Matson on June 5,
2006.  [SeaBright's CSMF at ¶ 15; Wootton Decl., Exh. D (tender
letter).]  Matson refused to acknowledge liability, and SeaBright
paid compensation, medical benefits, and the costs and fees of
defending Brewer.  [SeaBright's CSMF at ¶¶ 17, 24; Wootton Decl.
at ¶ 5; Wiper Decl. at ¶ 4.]

Following a full hearing before the Office of Workers'
Compensation Programs, Administrative Law Judge ("ALJ") Gerald
Etchingham held that Mr. Soares's back injury worsened as a
result of his employment with Matson and that Matson was the

4

"last responsible employer" pursuant to the LHWCA. [SeaBright's CSMF at ¶¶ 18-20; ALJ Order at 2-3, 24-28.] Brewer and Matson both disputed full liability for Mr. Soares's claims before the ALJ. The ALJ ordered Matson to reimburse SeaBright and Brewer for compensation and medical expenses paid to Mr. Soares for the time period after he began working for Matson on January 31, 2005. [SeaBright's CSMF at ¶ 21; ALJ Order at 28.] Matson appealed the ALJ Order to the Department of Labor Benefits Review Panel, but the ALJ Order was affirmed. [SeaBright's CSMF at ¶ 23; Wootton Decl. at ¶¶ 6-7, Exh. E (Decision and Order dated May 20, 2009).]

SeaBright alleges that it has paid in excess of $140,000 in legal fees and costs in defense of Brewer in connection with Mr. Soares's claims. [SeaBright's CSMF at ¶ 24; Wiper Decl. at ¶¶ 4-5, Exh. B.] Matson continues to refuse to reimburse SeaBright for the legal fees and costs it incurred in defending Brewer. [Motion at 2.]

SeaBright and Brewer filed their original Complaint on August 16, 2010, asserting claims for breach of contract and equitable indemnity. On April 28, 2011, this Court granted in part and denied in part Matson's Motion for Judgment on the Pleadings, dismissing with prejudice the breach of contract claim as to SeaBright and Brewer, and the equitable indemnity claim as to Brewer. [Dkt. no. 46; Brewer Envtl. Indus., LLC v. Matson

Terminals, Inc., Civ. No. 10-00221 LEK-KSC, 2011 WL 1637323 (D.
Hawai'i Apr. 28, 2011).] The Court granted SeaBright leave to
amend its Complaint to clearly articulate a claim for equitable
subrogation. [Id.]

SeaBright filed its First Amended Complaint on May 20,
2011. [Dkt. no. 49.] In its First Cause of Action ("Equitable
Subrogation"), SeaBright alleges that, under its insurance policy
with Brewer, it is contractually required to pay all attorneys'
fees and costs incurred by Brewer in connection with Mr. Soares's
claim. SeaBright alleges that it is subrogated to the rights and
claims of Brewer against Matson for all attorneys' fees and costs
expended on behalf of Brewer, for which Brewer would have been
entitled to recover from Matson. [Id. at ¶¶ 20-21.]

In its Second Cause of Action ("Equitable Indemnity"),
SeaBright alleges that, as a result of Matson's failure and
refusal to pay Mr. Soares's compensation and to accept the tender
of Brewer's defense, SeaBright expended legal fees and costs on
behalf of Brewer in connection with Mr. Soares's claims and
continues to expend significant legal fees and costs asserting
this claim against Matson. [Id. at ¶¶ 24-25.]

On June 17, 2011, Matson filed its Motion for Judgment
on the Pleadings or for Summary Judgment. [Dkt. no. 55.] That
motion came on for hearing before the Court on September 29,
2011. In its October 31, 2011 order granting in part and denying

in part that motion, the Court granted summary judgment as to SeaBright's Equitable Indemnity claim, but denied summary judgment as to Equitable Subrogation. [Dkt. no. 69; SeaBright Ins. Co. v. Matson Terminals, Inc., Civ. No. 10-00221 LEK-KSC, 2011 WL 5239614 (D. Hawai'i Oct. 31, 2011).]

## I. SeaBright's Motion

SeaBright moves for summary judgement or partial summary judgment on the grounds that: (1) Matson agreed to indemnify Brewer against Mr. Soares's claims; (2) SeaBright has a right of equitable subrogation against Matson; and (3) Matson owes SeaBright the cost of Brewer's defense against Mr. Soares's claim and the fees and costs associated with the present action.

### A. Contract Interpretation

As an initial matter, SeaBright sets forth basic principles of contract interpretation. [Mem. in Supp. of Motion at 7-8.] SeaBright states that contract interpretation is a matter of law that is appropriate for summary judgment. [Id. at 7 (citing Reed & Martin, Inc. v. City & Cnty. of Honolulu, 50 Haw. 347, 348-49, 440 P.2d 526, 527 (1968); United States ex rel. Int'l Bus. Mach. Corp. v. Hartford Fire Ins. Co., 112 F. Supp. 2d 1023, 1033 (D. Hawai'i 2000)).] SeaBright argues that summary judgment is appropriate in the present case, because the parties do not dispute either the terms of the Agreement or the language of the Indemnity Clause. [Id. at 8 (citing Cont'l Ins. Co. v.

7

<u>Metro-Goldwyn-Mayer, Inc.</u>, 107 F.3d 1344, 1346 (9th Cir. 1997)).]

B.    **Matson's Indemnification of Brewer**

SeaBright next asserts that Matson agreed to indemnify Brewer against Mr. Soares's claim.  SeaBright argues that the Agreement "unambiguously demonstrates that Matson agreed to indemnify Brewer against any and all expense or liability – 'including, without limitation, reasonable attorneys' fees, charges, and costs' – incurred by Brewer as a result of any claims 'relating to the Property Employees which arise from any act, omission, occurrence or matters that take place after the Cut-off Time.'"  [<u>Id.</u> (quoting Agreement at ¶ 5.3) (SeaBright's emphasis omitted).]  SeaBright contends that the ALJ's determination that Matson was responsible for Mr. Soares's disability benefits and medical expenses eliminates any issue of material fact as to whether Mr. Soares aggravated his back after the cut-off time and establishes that the aggravation of the injury was the "occurrence" that forced SeaBright to defend Brewer against Mr. Soares's LHWCA claim.  SeaBright argues that the ALJ's findings also confirm that Matson is obligated to reimburse SeaBright for the cost of defending Matson against Mr. Soares's claim.

1.    **Interpretation of the Indemnity Clause**

SeaBright argues that the Indemnity Clause must be interpreted consistent with the entire agreement.  It argues that

8

the "cardinal rule" in contract interpretation "'is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles and this intention will be gathered not from particular words and phrases but from the whole context of the agreement.'"  [Id. at 9 (quoting Hawaiian Pineapple Co. v. Saito, 24 Haw. 787, 797 (Haw. 1919) (SeaBright's emphasis omitted))].  SeaBright argues that the Indemnity Clause cannot be read without reference to the definition of "Property Employees" in Paragraph 1.27.[1]  It further argues that, because the Indemnity Clause governs the handling of "claim[s], demand[s] or litigation relating to the Property Employees," the Court must consider the nature of the Property Employees and the law governing their potential claims when construing the meaning of the Indemnity Clause.  [Id. at 9.]

## 2.    Indemnity Clause in Relation to the LHWCA

SeaBright predicts that Matson will argue that, because Mr. Soares initially injured his back during his employment with Brewer, Matson was under no obligation to indemnify or defend Brewer.  SeaBright takes the position that, because the Indemnity Clause specifically refers to potential claims from stevedores, it must be read in relation to the LHWCA.  Specifically,

---

[1] The Agreement defines "Property Employees" as "those employees of Seller hired by Purchaser listed on Schedule 1.27 together with a list of their titles, annual compensation, accrued vacation and annual benefits as of the Closing." [Agreement at ¶ 1.27.]

9

SeaBright argues that "any claim that a stevedore brings against his employer for a work-related injury must be under the Longshore Act."  [Id. at 10 (SeaBright's emphasis omitted) (citing Ne. Marine Terminal Co., Inc. v. Caputo, 432 U.S. 249, 254 n.4 (1977); Victory Carriers, Inc. v. Law, 404 U.S. 202, 213 n.12 (1971)).]  According to SeaBright, because Mr. Soares is a "stevedore" as defined in the Agreement, the Agreement must be read in relation to the LHWCA.  [Id.]

### 3. Compensable Injury in a LHWCA Cumulative Trauma Case

SeaBright next argues that the "last responsible employer rule," also known as the "aggravation rule," applies to all LHWCA claims and "requires that the last liable employer pay the full compensation owing the injured employee, regardless of prior injuries or harmful exposures."  [Id. at 11.]  SeaBright contends that Matson, Mr. Soares's employer at the time of the aggravated injury, is responsible for the entire claim.

SeaBright notes that the Ninth Circuit has stated that "'the [last responsible employer] rule generally holds the claimant's last employer liable for all of the compensation due the claimant, even though prior employers of the claimant may have contributed to the claimant's disability.'" [Mem. in Supp. of Motion at 11 (quoting Found. Constructors, Inc. v. Dir., Office of Workers Comp. Programs, 950 F.2d 621, 623 (9th Cir. 1991) (SeaBright's emphasis omitted).]  According to SeaBright,

there can be only one "compensable injury" under this rule, even
if the last injury is only an aggravation of a previously
existing injury.  [Id. at 11-12.]  SeaBright further contends
that the last responsible employer rule is well settled
throughout the country and applies regardless of the claimant's
length of employment with the last employer.  [Id. at 12-13
(citing Metro. Stevedore Co. v. Crescent Wharf & Warehouse Co.,
339 F.3d 1102 (9th Cir. 2003) (holding that the hearings officer
correctly determined that the plaintiff was the last responsible
employer, even though claimant had been employed only for one day
and was scheduled for surgery prior to employment with the
plaintiff)).]

        In reference to the ALJ Order, SeaBright argues that
"the only compensable injury to Mr. Soares was the aggravation of
his back problem at BIS/Matson through his last date of
employment in May 2005."  [Id. at 12 (SeaBright's emphasis
omitted).]  It argues that Mr. Soares's claim against Brewer
arose from the aggravation of the back injury that occurred while
Matson employed Mr. Soares.  [Id.]

### 4.   Matson's Interpretation of the Indemnity Clause

        SeaBright argues that the last responsible employer
rule is "such an integral part of the Longshore Act
jurisprudence" that Matson, as an employer of longshoremen,
cannot "plausibly argu[e] that the Indemnity Clause should be

read without reference to that rule." [Id. at 13.] SeaBright states that "'Hawaii courts have long expressed disapproval of interpreting a contract such that any provision be rendered meaningless.'" [Id. (quoting Nautilus Ins. Co. v. K. Smith Builders, Ltd., 725 F. Supp. 2d 1219, 1229 (D. Hawai'i 2010)).] SeaBright argues that, if it cannot enforce the Indemnity Clause, the Indemnity Clause would be rendered meaningless. [Id. at 13-14.]

SeaBright quotes this Court's order of October 31, 2011: "It defies logic and equity to provide Matson the windfall of avoiding any responsibility for the cost of defense (i.e., its share of the attorneys' fees), when it has been found liable for part of the compensation awarded to Mr. Soares." [Id. at 14 (quoting Order Granting in Part and Denying in Part Def.'s Motion for Summary Jdgmt. at 34).] SeaBright argues that the Court "overlook[ed] one point: Matson was found liable not for **part** but for **the entire** compensation award to Mr. Soares" and argues that equity requires that the Court give effect to the Indemnity Clause. [Id. (emphasis in original).]

   **C.   SeaBright's Right of Equitable Subrogation
         Against Matson for Breach of the Agreement**

SeaBright argues that, under the doctrine of equitable subrogation, it steps into Brewer's shoes to enforce the terms of the Agreement. [Id. at 14 (citing Peters v. Weatherwax, 69 Haw.

21, 28 (1987)).]  The Hawai'i Supreme Court has recognized that
"an insurer, having paid a loss or claim to or for its own
insured, becomes equitably subrogated to the rights of the
insured against the third-party who is responsible for the loss."
[Id. (citing State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.,
90 Hawai'i 315, 328 (1999)).]

        SeaBright argues that it is entitled to equitable
subrogation because: (1) SeaBright paid Brewer's attorneys' fees
and costs for defending against Mr. Soares's claim; (2) SeaBright
was required to pay those fees and costs pursuant to the policy;
and (3) SeaBright's rights to recovery are greater than Matson's
refusal to pay, because Matson was found liable for Mr. Soares's
injury and refused to defend or indemnify Brewer.  [Id. at 15.]

        **D.   SeaBright's Recovery of its Expenses for Defending
             Brewer and Fees and Costs Incurred Bringing this Claim**

        Finally, SeaBright seeks to recover from Matson the
attorneys' fees and costs it expended in defending Brewer and the
fees and costs incurred in prosecuting the present action.
SeaBright argues that, because it paid all of Brewer's defense
costs and the ALJ determined that Matson was liable for all of
Mr. Soares's compensation and medical benefits, it is subrogated
to all of Brewer's rights under the Agreement.  [Id. at 16
(citing Peters, 69 Haw. at 28 ("When subrogation occurs, the
substitute is put in all respects in the place of the party to
whose rights he is subrogated.")).]  It argues that the Indemnity

13

Clause provides that, since SeaBright is subrogee to Brewer's full rights under the Agreement, Matson owes SeaBright reimbursement for attorneys' fees and costs expended in its defense of Brewer.  [Id.]

SeaBright also requests that this Court award it its fees and costs associated with the present action.  SeaBright invokes Paragraph 12.14 of the Agreement, which provides that "the 'prevailing party' in any dispute relating to the sale of the Business 'shall be reimbursed for all reasonable costs incurred in connection therewith, including, without limitation, reasonable attorneys' fees and costs.'"  [Id. at 16 (quoting Agreement at ¶ 12.14).]  According to SeaBright, it steps into Matson's shoes and should be able to recover its expenses incurred in enforcing the Agreement under Paragraph 12.14.  [Id. at 16-17.]

## II.  **Matson's Opposition**

### A.  **Inapplicability of the Indemnity Clause to this Case**

Matson first argues that the present action does not implicate the Indemnity Clause in the Agreement.  Matson argues that, "absent an ambiguity, the contract terms should be interpreted according to their plain, ordinary, and accepted sense in common speech."  [Mem. in Opp. at 10 (quoting Koga Eng'g & Constr., Inc. v. State, 122 Hawai'i 60, 72, 222 P.3d 979, 991 (2010)).]  Matson takes the position that "[e]ither the terms of

14

the [Agreement] are unambiguous, in which case there is no need

to seek out external sources to give them meaning; or the terms

are ambiguous, but the only credible external source points in

exactly the opposite direction Seabright is asking the Court to

go in." [Id.] Matson offers the declaration of Gary J. North,

former president of Matson, which states that "there was never

any intent to incorporate the provisions of the LHWCA into the

[Agreement]" and that "there was never any intent that the [last

responsible employer rule] would have any bearing on how the

[Agreement] was to apply." [Id. at 10-11 (citing Mem. in Opp.,

Decl. of Gary J. North at ¶¶ 2-3).]

Matson offers three reasons why the term "occurrence"

in Paragraph 5.3 of the Agreement was not meant to reference the

last responsible employer rule:

> (1) neither the [last responsible employer
> rule] nor the statute it was design to apply
> to, the LHWCA, are even mentioned in the
> [Agreement] nor is there any reason for
> reading them in; (2) the Administrative Law
> Judge rendered his decision entirely in the
> context of the [last responsible employer
> rule] and the LHWCA and never even mentioned
> the [Agreement] let alone based any part of
> his ruling on it; and (3) the [last
> responsible employer rule] serves a distinct
> purpose which expressly alters the common
> speech concept of "injury" to create
> efficiency in adjudicating workers'
> compensation claims not to define the
> separate contract rights of parties with
> respect to indemnity or fee-shifting.

[Id. at 11.] Matson expands on each of these points in turn.

## 1. Non-incorporation of the LHWCA or the Last Responsible Employer Rule

Matson agrees with SeaBright that the intent of the parties to a contract must be gathered from the context of the agreement, but argues that SeaBright ignores this principle. It argues that the parties did not intend to incorporate the LHWCA or the last responsible employer rule into the Agreement for any purpose, including indemnification. [Id. at 12.]

First, Matson points out that SeaBright "takes the position that the entire contract must be viewed as a whole but then it immediately seeks to apply a legal doctrine which appears nowhere in that entire document." [Id.] Specifically, Matson points to Paragraph 2.4.2, which mentions longshore claims and provides that "[a]ny injuries or claims for personal injury or property damage arising prior to the Closing Date, even if not filed until after the Closing Date, including longshore and workers compensation claims shall remain the responsibility of the Seller." [Id. at 13 (quoting Agreement at ¶ 2.4.2).]

Matson argues that: Mr. Soares suffered injury prior to the Closing Date; all of Mr. Soares's subsequent symptoms were caused by the initial injury; and Mr. Soares's claim against Matson listed an injury date that included time prior to the Closing Date. [Id.] Matson contends that Paragraph 2.4.2 mandates that Brewer is responsible for Mr. Soares's injury, and

Paragraph 2.4.2 should supersede Paragraph 5.3, because it specifically mentions longshore claims, and "'specific terms and exact terms are given greater weight than general language.'" [<u>Id.</u> at 14 (quoting <u>PDM Strocal, Inc. v. Fireman's Fund Ins. Co.</u>, 73 Fed. Appx. 915, 917 (9th Cir. 2003)).]

Second, Matson argues that Paragraph 12.8 explicitly bars SeaBright's claim. Paragraph 12.8 states:

> Nothing in this Agreement, express or implied, is intended to confer upon any person, other than the Parties and their respective heirs, executors, personal representatives, successors and assigns, any rights or remedies under or by reason of this Agreement. Nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third person to any Party, nor shall any provision herein be construed so as to give any third person any right of subrogation or action over against any Party.

[<u>Id.</u> at 14 (quoting Agreement at ¶ 12.8) (SeaBright's emphasis omitted).] Matson argues that this paragraph demonstrates that: (1) the Agreement was not intended to relieve SeaBright of its preexisting obligation to defend Brewer; and (2) the Agreement forbids third parties from asserting subrogation claims. [<u>Id.</u> at 14-15.]

Third, Matson argues that SeaBright misconstrues Schedule 1.27, which lists all employees, including stevedores.[2]

_____

[2] Schedule 1.27, titled "Property Employees," is attached to the Agreement and ostensibly lists the employees in an
(continued...)

17

It argues that SeaBright provides no authority in support of its
position that the inclusion of stevedores necessarily mandates
the incorporation of the LHWCA.  [Id. at 15-16.]  Employees
listed in Schedule 1.27 could have claims wholly unrelated to the
LHWCA.  Matson argues that there is no justification for imposing
the provisions of the LHWCA on the Agreement. [Id. at 16-17.]

### 2.     Inapplicability of the LHWCA and the Last Responsible Employer Rule

Matson takes the position that, "even if Seabright were
right that the LHWCA must be incorporated into the [Agreement],
then the bar on fee-shifting as between employers and insurers
would be incorporated too and would serve to prevent the type of
relief Seabright is seeking."  [Id. at 17-18.]  Matson reiterates
that, if the court finds the term "occurrence" to be free of
ambiguity, it must interpret the term according to its plain,
ordinary, and accepted sense in common speech.  [Id. at 18
(quoting Koga Eng'g & Constr., Inc., 122 Hawai'i at 72, 222 P.3d
at 991).]  Even assuming there were such ambiguity, Matson argues
that there is no evidence that the parties intended to
incorporate the last responsible employer rule.  [Id.]

Matson also discusses Foundation Constructors, Inc. v.
Director, Office of Workers Compensation Programs, 950 F.2d 621
(9th Cir. 1991), and the "aggravation rule."  [Mem. in Opp. at

---

[2](...continued)
organizational chart.  [Agreement at pg. 41.]

19.] Matson argues that this rule is problematic for two reasons. First, there is little difference between the natural progression of an injury and the "aggravation" of an injury. [Id. at 19-20.] The last responsible employer rule is designed to promote efficiency, not fairness. [Id. at 20 (citing Found. Constructors, Inc., 950 F.2d at 623).] Matson argues that there is "no equitable justification for basing a shifting of attorneys' fees on such an at times arbitrary doctrine . . . ." [Id.] Matson contends that it is inequitable "to find that an employer who has already paid more than its share – along with its own attorneys' fees – must also pay for another party's attorneys' fees based solely on a finding of responsibility under the arbitrary by design [last responsible employer rule]." [Id. at 21.]

The second reason Matson takes issue with the "aggravation rule" is that the terms "natural progression" and "aggravation" contemplate a later injury. Matson posits that the later injury should also be an "occurrence" and questions whether, under this principle, SeaBright could have recovered from Brewer, if Brewer had been found liable for the injury. Matson asserts that the Agreement should not incorporate the last responsible employer rule or the LHWCA, thus defeating SeaBright's remaining claim. [Id. at 21-22.]

B. **Factual Dispute Regarding Equitable Subrogation**

19

Second, Matson argues that, even assuming that Brewer was entitled to indemnity under the Agreement, it failed to abide by the terms of the Agreement. Matson points to Paragraph 12.19, which provides that, within ten days after notice to an indemnified party of a claim for which indemnification may be sought, "Indemnitee shall give written notice of such legal action to the other Party ("Indemnitor") . . . . If the Indemnitee fails to give such notice then, if and to the extent the Indemnitor is prejudiced thereby, the obligations of the Indemnitor to indemnify, defend and hold harmless the Indemnitee shall abate." [Id. at 23 (quoting Agreement at ¶ 12.19).] Matson argues that Brewer failed to tender defense of any claim to Matson until almost a year after Mr. Soares had filed his first claim. [Id. at 24.] According to Matson, Brewer's failure to tender the defense in accordance with Paragraph 12.19 deprived Matson of its opportunity to assume control of the legal action. Matson claims that disregard of Paragraph 12.19 would put it "in the impossible position of having to blindly accept to pay a year's worth of attorneys' fees all while giving up its right to contest responsibility in a matter in which the claimant himself was insisting that Brewer was at fault." [Id.]

Matson argues that, "'since legal subrogation is equitable in nature, the right will not be enforced unless the rights of the party seeking it are greater than the rights of

others.'" [Id. at 25 (quoting State Farm Fire & Cas. Co., 90
Hawai'i at 329 n.8, 978 P.2d at 767 n.8).] Matson urges the
Court to deny summary judgment because, as there is no showing
that Matson was at fault, SeaBright fails to establish that its
rights are greater than Matson's. [Id.]

> ### C. Insufficient Basis for SeaBright to Seek its Fees in the Present Case

Third, Matson argues that, although the Agreement can
provide for the recovery of attorneys' fees, such recovery is not
appropriate in the present action. Matson argues that Paragraph
12.14 is inapplicable to the present dispute, which does not
relate to any "transaction" contemplated by the Agreement.
"Transaction" is defined by the Agreement as "collectively the
transactions contemplated in this Agreement." [Id. at 26
(quoting Agreement at ¶ 1.31).] Rather, Matson takes the
position that the term "transaction" "relate[s] to the actual
sale of the business and the transfer of various leases, titles,
and deeds, not any dispute over workers' compensation claims."
[Id.] Matson therefore requests that the Court deny SeaBright's
request for attorneys' fees and costs.

## III. SeaBright's Reply

> ### A. Non-ambiguity of the Indemnity Clause

SeaBright first argues that it is not asking the Court
to read the LHWCA into the Agreement. Rather, it relies on the

"binding factual finding from the ALJ that Mr. Soares' claim arose from an 'act, omission, occurrence or matter' that took place after Matson purchased the stevedoring operation from Brewer." [Reply at 3.] It argues that the Indemnity Clause is clear and unambiguous, and that the ALJ already determined that Mr. Soares's claim arose from an "act, omission, occurrence or matters" after the cut-off date. Matson was afforded a full and fair opportunity to litigate the factual issues before the ALJ and cannot now re-litigate the issue of when Mr. Soares aggravated his injury. [<u>Id.</u> at 3 (citing <u>Hagens v. United Fruit Co.</u>, 135 F.2d 842 (2d Cir. 1943)).]

**B.    The LHWCA's Effect on the Application of the Indemnity Clause to this Case**

SeaBright next argues that, although the LHWCA and the last responsible employer rule should not be read specially into the Agreement, they "affect the application of the Indemnity Clause, because Mr. Soares' claim was a Longshore claim." [<u>Id.</u> at 4.] SeaBright cites state and federal cases for the proposition that the laws existing at the "'time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.'" [<u>Id.</u> (some citations omitted) (quoting <u>Home Bldg. & Loan Ass'n v. Blaisdell</u>, 290 U.S. 398, 429-30 (1934)).] SeaBright contends that the LHWCA and the last responsible employer rule were in force at the time that the

parties executed the Agreement and thus become a part of the

Agreement.

SeaBright argues that the terms of the Indemnity Clause

are unambiguous and the evidence Matson offers should be

disregarded. [Id. at 5.] Matson's argument that the parties did

not intend to apply the LHWCA to the Agreement is irrelevant,

insofar as it asks the Court to disregard laws that would

otherwise apply to the Agreement. [Id.] SeaBright concludes

that the LHWCA informs the Court as to which "act, omission,

occurrence or matters" gave rise to Mr. Soares's claim and guided

the ALJ Order in SeaBright's favor. [Id.]

### C. **Matson's Ancillary Arguments**

As to Matson's argument that Paragraph 2.4.2 precludes

equitable subrogation, SeaBright argues that it paid Mr. Soares's

compensation benefits during his employment with Brewer and is

now only seeking expenses incurred as a result of Mr. Soares's

cumulative trauma claim that arose during his employment with

Matson. SeaBright says that the ALJ Order conclusively

determined that the cumulative trauma occurred after the cut-off

date and was not Brewer's responsibility. [Id. at 6.]

Second, as to Matson's argument that Paragraph 12.8

also bars SeaBright's equitable subrogation claim, SeaBright

argues that this Court has already ruled on this very issue in

conjunction with Matson's motion for judgment on the pleadings or

23

for summary judgment.  SeaBright argues that the Court's ruling
in its October 31, 2011 order established the "law of the case"
and cannot be reexamined.  [Id. (citing Ditto v. McCurdy, 98
Hawaiʻi 123, 128 (2002)).]  Even if the Court were to reexamine
this issue, SeaBright argues that, as its right to equitable
subrogation arises from equitable principles, Matson's arguments
would still fail.  [Id. at 6-7.]

        Third, as to Matson's argument that Schedule 1.27 does
not incorporate the LHWCA or the last responsible employer rule,
SeaBright repeats its argument that such laws apply to contracts,
whether or not it was "intended" by the parties.  [Id. at 7.]

        Fourth, as to Matson's passing implication that the
ALJ's declining to consider the contractual indemnity issue
constitutes a decision on that issue, SeaBright argues that the
ALJ passed on considering that issue because it did not have
jurisdiction to decide questions of contractual indemnity.  [Id.
(citing Temp. Empl. Servs. v. Trinity Marine Group, Inc., 261
F.3d 456, 465 (5th Cir. 2001) (holding that the ALJ "lacked
authority to adjudicate the parties' contractual dispute in this
case")).]  It contends that Matson's argument is disingenuous,
and it cites to portions of the transcript of proceedings before
the ALJ in which Matson's counsel agreed that "the ALJ cannot
interpret insurance contracts."  [Id. at 8 n.3 (quoting Mem. in
Opp., Decl. of Counsel, Exh. C (Transcript, Nov. 29, 2007) at

38:8-12).]

**D.    SeaBright's Right to Enforce the Indemnity Clause**

        In response to Matson's argument that a factual dispute
regarding Brewer's notice to Matson under Paragraph 12.19 of the
Agreement precludes summary judgment, SeaBright argues that
Matson and SeaBright received notice of Mr. Soares's claim at the
same time, so Matson cannot argue that it was prejudiced by
untimely notice.  [Id. at 8.]  SeaBright points to a letter dated
February 22, 2006, in which Matson and Brewer received formal
notice of Mr. Soares's claim simultaneously.  [Id. (citing
Wootton Decl., Exh. C).]

        SeaBright takes issue with Matson's implicit position
that it intends to prove at trial that it would have accepted the
tender of Matson's defense, and that it would have defended
Brewer better than Brewer defended itself.  [Id. at 9.]
SeaBright argues that Matson has not provided any facts in
support of this position.

**E.    SeaBright's Claim for Fees Incurred in this Matter**

        Finally, SeaBright argues that, with regard to the
claim for attorneys' fees and costs associated with the present
action, its present suit to enforce the Indemnity Clause relates
directly to the "transaction" at issue.  [Id.]  SeaBright cites
to Continental Heller Corp. v. AmTech Mechanical Services, Inc.,
53 Cal. App. 4th 500 (1997), for the proposition that attorneys'

25

fees may be recovered in an action to enforce a contractual
indemnity agreement. [Id.] According to SeaBright, the
attorneys' fees provision in the Agreement is broadly worded and
allows the prevailing party to recover fees and costs in any
dispute "relating to the Transaction." [Id.] SeaBright argues
that the present suit to enforce the Indemnity Clause is related
to the "transaction," as the Indemnity Clause only exists as an
element of the "transaction" and operates in reference to the
cut-off time when the "transaction" closed. [Id.]

## IV.  SeaBright's Objections to Declarations

In conjunction with its reply memorandum, SeaBright
filed an objection to two declarations submitted by Matson in
support of its memorandum in opposition. [SeaBright's Objections
to the Declarations of Gary J. North and Peter W. Burns (dkt. no.
89-1).]  SeaBright argues that the declarations contradict the
unambiguous terms of the Agreement and that Gary North and Peter
Burns lack qualifications to put forward the legal conclusions
contained in their respective declarations. [Id.]

**DISCUSSION**

## I.  Recovery of Legal Fees and Costs SeaBright
## Incurred in Connection with Mr. Soares's Claim

### A.  The Indemnity Clause

The Court first considers SeaBright's argument that the
Court must construe the Indemnity Clause as properly requiring

Matson to indemnify Brewer with regard to Mr. Soares's claim.

Conversely, Matson contends that the Indemnity Clause is

inapplicable in this case and that SeaBright's interpretation

does not comport with the law regarding contract interpretation.

In construing the Agreement, the Court applies Hawai'i

contract law principles.  See, e.g., Metzler Contracting Co., LLC

v. Stephens, Civ. No. 07-00261 HG-LEK, 2007 WL 1977732, at *3 (D.

Hawai'i July 3, 2007).  "[C]ourts should not draw inferences from

a contract regarding the parties' intent when the contract is

definite and unambiguous."  State Farm Fire & Cas. Co. v. Pac.

Rent-All, Inc., 90 Hawai'i 315, 324, 978 P.2d 753, 762 (1999).

The "court's principal objective is to ascertain and effectuate

the intention of the parties as manifested by the contract in its

entirety.  If there is any doubt, the interpretation which most

reasonably reflects the intent of the parties must be chosen."

Brown v. KFC Nat'l Mgmt. Co., 82 Hawai'i 226, 240, 921 P.2d 146,

160 (1996) (quoting Univ. of Haw. Prof'l Assembly v. Univ. of

Haw., 66 Haw. 214, 219, 659 P.2d 720, 724 (1983)).

The Indemnity Clause requires that Matson:

> indemnify, defend and hold harmless [BREWER]
> from and against any and all loss, damage,
> claim, cost and expense and any other
> liability whatsoever (including, without
> limitation, reasonable attorneys' fees,
> charges and costs) incurred by [BREWER] by
> reason of any claim, demand or litigation
> relating to the Property Employees which
> arise from any act, omission, occurrence or
> matters that take place after the Cut-off

27

Time.

[Agreement at ¶ 5.3 (alteration added).]  The question is whether Mr. Soares's claim arose before the cut-off time, so as to implicate Brewer's/SeaBright's liability, or after the cut-off time, so as to implicate Matson's liability.

The Court is instructed by the Ninth Circuit's decision in <u>Foundation Constructors, Inc. v. Director, Office of Workers Compensation Programs</u>, 950 F.2d 621 (9th Cir. 1991).  In that case, the Ninth Circuit considered a factually similar situation, where an employer appealed the Department of Labor Benefits Review Board's determination that the employer was liable for a claimant's disability compensation under the LHWCA.  The claimant suffered an injury causing back pain during his employment with a previous employer.  Six months after the claimant's company was acquired by a new owner, the claimant's doctor determined that his back condition had deteriorated to the point that claimant was unable to work.  <u>Id.</u> at 622.  The claimant filed a claim for benefits under the LHWCA against the later employer.  The administrative judge determined that, under the "last responsible employer" rule, the employer was totally liable for the claimant's claim, even though it only employed the claimant for six months.  <u>Id.</u> at 623.

On appeal, the Ninth Circuit considered the applicable test under the last responsible employer rule and determined that

28

the "two-injury rule" for cumulative trauma injury should apply.
The Ninth Circuit stated:

> If the disability resulted from the natural
> progression of a prior injury and would have
> occurred notwithstanding the subsequent
> injury, then the prior injury is compensable
> and accordingly, the prior employer is
> responsible.  If, on the other hand, the
> subsequent injury aggravated, accelerated or
> combined with claimant's prior injury, thus
> resulting in claimant's disability, then the
> subsequent injury is compensable injury, and
> the subsequent employer is responsible.

Id. at 624 (quoting Kelaita v. Dir., Office of Workers Comp.
Programs, 799 F.2d 1308, 1311 (9th Cir. 1986)).  The court upheld
the Benefits Review Board's ruling, holding that "substantial
evidence existed to support the ALJ's finding that Vanover's back
injury was aggravated by his employment with Foundation."  Id.

Similarly, in the present case, Mr. Soares brought a
claim against his employers under the LHWCA, alleging injury
initially occurring during his employment with Brewer, but
worsening during his employment with Matson.  The ALJ reviewed
the testimony of Mr. Soares's doctors and the parties' expert
witnesses and determined that, in applying the "two injury test"
under the "last responsible employer" rule, "Brewer has shown by
a preponderance of the evidence that Claimant's work activities
from January to May 2005 permanently aggravated or worsened his
lower back condition, even if only a small amount . . . .  This
finding is supported by the medical records and credible record-

keeping . . . ." [ALJ Order at 26.] The ALJ weighed the
extensive evidence presented by both parties and concluded that
Matson "is liable for all of Claimant's disability and medical
expenses/benefits from May 21, 2005 and continuing." [Id. at
27.]

Based on the ALJ's carefully reasoned Order, the Court
agrees that Matson is indeed the last responsible employer.
Mr. Soares filed his claim under the LHWCA, thus incorporating
its legal nuances, including the last responsible employer rule.
The Court will not disturb the ALJ's finding, based on
substantial evidence, that Mr. Soares's back injury incurred
during his employment with Matson was not a "natural
progression," but rather an aggravation or acceleration of his
previous injury.

Furthermore, the Court determines that Matson's
responsibilities as Mr. Soares's "last responsible employer"
apply to the Indemnity Clause. Matson agreed to indemnify Brewer
against all expenses, including reasonable attorneys' fees and
costs, that arise "by reason of any claim, demand or litigation
relating to the Property Employees which arise from any act,
omission, occurrence or matters that take place after the Cut-off
Time." [Agreement at ¶ 5.3.] The ALJ determined that
Mr. Soares's injury arose during his employment with Matson, even
though the initial injury occurred during his employment with

Brewer. The Court sees no compelling reason to divorce the ALJ's determination of liability for Mr. Soares's injury from the Indemnity Clause in the Agreement. Nor is the Court compelled by Matson's argument that Paragraphs 12.8 and 2.4.2 bar the indemnification specifically contemplated in Paragraph 5.3. Accordingly, the Court CONCLUDES that, because Mr. Soares's claim arose from an "act, omission, occurrence or matter" that occurred after Matson purchased the stevedoring operation from Brewer, Brewer would be able to enforce the Indemnity Clause against Matson.

> **B. Equitable Subrogation**

Given that the Agreement permits Brewer to recover its attorneys' fees and costs from Matson, SeaBright argues that, under the doctrine of equitable subrogation, it steps into Brewer's shoes to enforce the Indemnity Clause against Matson.

Equitable subrogation has been defined as "a legal fiction, which permits a party who satisfies another's obligation to recover from the party 'primarily liable' for the extinguished obligation." In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002) (quoting In re Air Crash Disaster, 86 F.3d 498, 549 (6th Cir. 1996)). "The right of 'legal' or 'equitable' subrogation arose as a 'creature of equity' and 'is enforced solely for the purpose of accomplishing the ends of substantial justice.'" Id. (quoting Memphis & L.R.R. Co. v. Dow, 120 U.S. 287, 302 (1887)).

The Hawaiʻi Supreme Court explained equitable subrogation as follows:

> [a]n insurer's right to legal or equitable subrogation arises only when certain requirements are met. First, the insurer must have paid the loss. The right extends to the extent of the amount actually paid and the amount paid must have been paid to the insured.
>
> In addition, the amount paid by the insurer must result in the insured's being made "whole." The general rule is that the subrogated insurer is entitled to no subrogation, or to reduced subrogation, if the result of full subrogation would be to cause the insured to be less than fully compensated for the loss, although some cases hold to the contrary. . . .
>
> Courts have taken three approaches to the issue of whether or not subrogation will be allowed when the insured has not been fully compensated. One approach is to find that the insurer is entitled to the full amount of its subrogation, whether or not its insured is made whole. Another is to find that the insurer is entitled to no subrogation until the insured recovers his entire loss, between the insurance payment and the recovery from the tortfeasor. The third approach is to hold that the court should make an equitable distribution of any recovery from the tortfeasor, in light of all of the circumstances.
>
> . . . .
>
> The second requirement for the existence of the right to legal subrogation is that the insurer must not have merely volunteered to pay the loss, but must have been required to pay based upon[, for example, operation of law or a] . . . contract of insurance. . . .
>
> Finally, since legal subrogation is

> equitable in nature, the right will not be
> enforced unless the rights of the party
> seeking it are greater than the rights of
> others.

State Farm Fire & Cas. Co., 90 Hawai‘i at 329 n.8, 978 P.2d at

767 n.8 (quoting 4 R. Long The Law of Liability Insurance,

§ 23.02[2], at 23.8-13 (1998)).

In considering subrogation in the insurance context,

the Hawai‘i Supreme Court further stated that, because

> subrogation involves "stepping into" the
> shoes of another, when an insurer brings
> an action against a tortfeasor based
> upon its subrogation rights, the
> insurer's rights flow from the insured's
> rights.  The subrogated insurer, known
> as the "subrogee," can be subrogated to
> and enforce only such rights as the
> insured, known as the "subrogor," has
> against the party whose wrong caused the
> loss.  In a subrogation suit, a
> tortfeasor may assert against the
> insurer any defense which the tortfeasor
> could have asserted against the insured.
>
> The Law of Liability Insurance, supra,
> § 23.03[2], at 23-13 to 23-14.  Therefore,
> the general rule provides that an insured may
> affect its insurer's subrogation rights
> because they are derivative, i.e., the
> insurer's subrogation rights rest upon the
> viability of the insured's claim against the
> tortfeasor.  Id. § 23.04[1], at 23-40.

Id. at 329, 978 P.2d at 767.  The Hawai‘i Supreme Court

continued:

> Subrogation is a venerable creature of
> equity jurisprudence, "so administered as to
> secure real and essential justice without
> regard to form[.]" H. Sheldon, The Law of
> Subrogation § 1, at 2 (1882) (footnote

33

omitted).  "It is broad enough to include
every instance in which one party pays a debt
for which another is primarily answerable,
and which, equity and good conscience, should
have been discharged by the latter[.]"  Id.
(footnote omitted).  It "is defined by
Sheldon to be 'the substitution of another
person in the place of a creditor, so that
the person in whose favor it is exercised
succeeds to the rights of the creditor in
relation to the debt.'"  Kapena v.
Kaleleonalani, 6 Haw. 579, 583 (1885).  When
subrogation occurs, "[t]he substitute is put
in all respects in the place of the party to
whose rights he is subrogated."  Id.  In
effect, he "steps into the shoes" of the
party.  See Putnam v. Commissioner, 352 U.S.
82, 85, 77 S. Ct. 175, 176, 1 L.Ed.2d 144
(1956); A. Windt, Insurance Claims and
Disputes § 10.05, at 409 (1982); Black's Law
Dictionary 1279 (5th ed. 1979).

            . . . .

. . . Furthermore, "[a]lthough, as between
debtor and creditor, the debt may be
extinguished, yet, as between the person who
has paid the debt and the other parties, the
debt is kept alive [by the doctrine of
subrogation], so far as may be necessary to
preserve the securities."  H. Sheldon, supra,
§ 11, at 10 (footnote omitted).

Id. at 331, 978 P.2d at 769 (quoting Peters v. Weatherwax, 69

Haw. 21, 27, 29, 731 P.2d 157, 161, 162 (1987)).

     The Court's determination, then, requires a successive

three-part inquiry: (1) whether SeaBright fully paid a loss that

resulted in Brewer being made "whole"; (2) whether SeaBright was

required to pay the loss; and (3) whether SeaBright's rights are

greater than Matson's rights.  See id. at 329 n.8, 978 P.2d at

767 n.8.

First, there is no dispute that SeaBright paid Brewer's attorneys' fees and costs incurred in defending against Mr. Soares's claim. Second, there is also no dispute that SeaBright was required to pay those attorneys' fees and costs pursuant to the insurance policy it issued to Brewer.

The parties dispute the third prong. SeaBright argues that its "rights to recover those attorneys' fees and costs are greater than Matson's right to refuse to pay, as Matson was found liable for Mr. Soares' injury and refused to defend or indemnify Brewer and SeaBright." [Mem. in Supp. of Motion at 15.] Conversely, Matson argues that Brewer's failure to give timely notice of Mr. Soares's claim extinguished any right to recovery. [Mem. in Opp. at 23-25.] Paragraph 12.19 of the Agreement provides that, within ten days after receiving notification of Mr. Soares's claim, Brewer was to "give written notice of such legal action to the other Party . . . . If the Indemnitee fails to give such notice then, if and to the extent the Indemnitor is prejudiced thereby, the obligations of the Indemnitor to indemnify, defend and hold harmless the Indemnitee shall abate." [Agreement at ¶ 12.19.] Matson argues that it was prejudiced by the untimely notice, because it lost the ability to control the legal action and would be required to "blindly" pay attorneys' fees. [Mem. in Opp. at 24.]

The Court sees no merit to Matson's argument that its

right to refuse to indemnify Brewer is greater than SeaBright's right to recover its attorneys' fees and costs. Brewer's failure to give notice to Matson within the ten-day period established in Paragraph 12.19 did not result in any prejudice to Matson. Matson presents no evidence that it was prejudiced by not being able "to assume control of the litigation" (or, indeed, that it even would have accepted the tender) and, at the hearing on the present Motion, Matson could not offer any specifics as to this alleged prejudice. In fact, Matson greatly benefitted because SeaBright protected Brewer's interests during that litigation and paid all of Brewer's legal fees and costs. Moreover, Matson's argument that it should not be required to pay attorneys' fees relating to an injury for which it was not determined liable similarly fails, because the ALJ did find Matson liable for Mr. Soares's claim. As the Court stated in its October 31, 2011 Order, "[i]t defies logic and equity to provide Matson the windfall of avoiding any responsibility for the costs of defense (_i.e._, its share of attorneys' fees), when it has been found liable for part of the compensation award to Mr. Soares." [Order Granting in Part & Denying in Part Defs.' Motion for Jdgmt. on the Pleadings or for Summary Jdgmt. at 34.] Accordingly, based on the equities of the circumstances before the Court, the Court finds that SeaBright's right to recovery is greater than Matson's right to refuse to indemnify SeaBright.

The Court therefore FINDS that SeaBright satisfies the three-part test for equitable subrogation. The Court CONCLUDES that SeaBright stands in Brewer's shoes with no greater or lesser rights and, under Paragraph 5.3 of the Agreement, is entitled to recover from Matson its attorneys' fees and costs expended in defending Brewer against Mr. Soares's claim.

## II. <u>Attorneys' Fees and Costs in the Present Litigation</u>

The Court next addresses SeaBright's request for its attorneys' fees and costs incurred in connection with the prosecution of the instant case.

SeaBright initially argues in its memoranda that the terms of the Agreement provide the basis for the recovery of its attorneys' fees and costs. Paragraph 12.14 of the Agreement provides that, "[i]f any dispute between Seller and Purchaser, relating to the Transaction, should result in litigation, the prevailing party shall be reimbursed for all reasonable costs incurred in connection therewith, including, without limitation, reasonable attorneys' fees and court costs." [Agreement at ¶ 12.14.] "Transaction" is defined by the Agreement as "collectively the transactions contemplated in this Agreement." [Agreement at ¶ 1.31.] SeaBright contends that, because the "Indemnity Clause only exists as an element of the Transaction" and "the Indemnity Clause specifically operates in reference to the Cut-Off Time when the transaction closed," the suit to

enforce the Indemnity Clause must necessarily be "relat[ed] to the Transaction."  [Reply at 10.]

Conversely, Matson argues that the type of "transaction" contemplated by the Agreement excludes the present dispute over equitable subrogation.  Matson takes the position that the term "transaction" "obviously relate[s] to the actual sale of the business and the transfer of various leases, titles, and deeds, not any dispute over workers' compensation claims." [Mem. in Opp. at 26.]

The Court does not agree with SeaBright's overly broad interpretation of Paragraph 12.14.  In interpreting a contract,

> it is well-settled that "courts should not
> draw inferences from a contract regarding the
> parties' intent when the contract is definite
> and unambiguous.  In fact, contractual terms
> should be interpreted according to their
> plain, ordinary meaning and accepted use in
> common speech.  The court should look no
> further than the four corners of the document
> to determine whether an ambiguity exists."

Williams v. Aona, 121 Hawai'i 1, 15, 210 P.3d 501, 515 (2009) (quoting United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Dawson Int'l, Inc., 113 Hawai'i 127, 140, 149 P.3d 495, 508 (2006)).  SeaBright has not presented any evidence tending to show an ambiguity or that the term "transaction" encompasses anything more than the business transactions for which the Agreement was created.  The Court is unwilling to stretch the definition beyond its "plain, ordinary meaning and accepted use"

to include an insurer's claim for equitable subrogation regarding an employee's workers-compensation claim. Accordingly, SeaBright cannot look to the Agreement as a basis for recovery of its attorneys' fees.

SeaBright, however, can seek an alternate basis for an award of attorneys' fees. According to the Hawai'i Supreme Court, "[n]ormally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent." In re Water Use Permit Applications, 96 Hawai'i 27, 29, 25 P.3d 802, 804 (2001) (citation and quotation marks omitted).

Hawai'i law provides a statutory basis for recovery of attorneys' fees in actions sounding in contract. Hawai'i Revised Statutes § 607-14 provides, in pertinent part:

> In all the courts, in all actions in the
> nature of assumpsit and in all actions on a
> promissory note or other contract in writing
> that provides for an attorney's fee, there
> shall be taxed as attorneys' fees, to be paid
> by the losing party and to be included in the
> sum for which execution may issue, a fee that
> the court determines to be reasonable;
> provided that the attorney representing the
> prevailing party shall submit to the court an
> affidavit stating the amount of time the
> attorney spent on the action and the amount

39

> of time the attorney is likely to spend to
> obtain a final written judgment, or, if the
> fee is not based on an hourly rate, the
> amount of the agreed upon fee.  The court
> shall then tax attorneys' fees, which the
> court determines to be reasonable, to be paid
> by the losing party; provided that this
> amount shall not exceed twenty-five per cent
> of the judgment.

"Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations."  Leslie v. Estate of Tavares, 93 Hawai'i 1, 5, 994 P.2d 1047, 1051 (2000) (citations omitted); see also Blair v. Ing, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001).  "The determination of when an action is in the nature of assumpsit should be based on whether the actual factual allegations are such that historically the action would have been brought in assumpsit."  Leslie, 93 Hawai'i at 5, 994 P.2d at 1052 (citations omitted).  In determining whether the character of the action is in assumpsit, the court should examine "the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought."  Id. at 6, 994 P.2d at 1052.

Although SeaBright had not previously briefed this issue, at the hearing on the present motion, SeaBright agreed with the Court's suggestion that the present action sounds in contract and thus permits recovery of attorneys' fees under Hawai'i Revised Statutes § 607-14.  Matson took the position that

40

the award of attorneys' fees under that section is discretionary.

The Court determines that the present action sounds in contract. At issue is the Agreement and the effect the Court should give to the Indemnity Clause. Both parties present arguments regarding the correct interpretation of the Agreement under Hawai'i law and ask the Court to interpret the Indemnity Clause. The relief sought by the First Amended Complaint is the recovery of attorneys' fees as provided by the terms of the Agreement. The Court concludes that Hawai'i Revised Statutes § 607-14 applies to this lawsuit for recovery of attorneys' fees and costs. The Court therefore GRANTS SeaBright's requests for reasonable attorneys' fees and costs incurred in the present lawsuit. The Court refers this matter to the magistrate judge to prepare findings and recommendations regarding the amount of the award.

## CONCLUSION

On the basis of the foregoing, SeaBright's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment of Defendants' Liability, filed February 8, 2012, is HEREBY GRANTED. The Court DIRECTS the Clerk's Office to enter judgment in favor of SeaBright and against Matson.

//

//

//

The Court DIRECTS SeaBright to file documentation supporting its request for attorneys' fees and costs with the Magistrate Judge by June 18, 2012.  Any opposition shall be filed by July 2, 2012, and a reply shall be filed by July 9, 2012.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 31, 2012.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**SEABRIGHT INSURANCE COMPANY V. MATSON TERMINALS, INC., ET AL;**
**CIVIL NO 10-00221 LEK-KSC; ORDER GRANTING SEABRIGHT INSURANCE**
**COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,**
**PARTIAL SUMMARY JUDGMENT OF DEFENDANTS' LIABILITY**